# United States District Court
## District of New Mexico
### Office of the Clerk
### Pete V. Domenici United States Courthouse



**Mitchell R. Elfers**
**Clerk of Court**

333 Lomas Blvd. N.W. - Suite 270
Albuquerque, New Mexico 87102
(505) 348-2000 - Fax (505) 348-2028

**Divisional Offices**
106 South Federal Place
Santa Fe, NM 87501
(505) 988-6481
Fax (505) 988-6473

100 North Church Street
Las Cruces, NM  88001
(575) 528-1400
Fax (575) 528-1425

May 1, 2025

*Via Notice of Electronic Filing*
Chris Wolpert, Clerk
United States Court of Appeals for the Tenth Circuit
The Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

Re: *Mondragon v. Rio Rancho Public Schools Board of Education et al 1:21-cv-00427-KK-JMR*

Dear Mr. Wolpert:

A Notice of Appeal was filed in the above referenced case.   The attached preliminary record consists of the Notice of Appeal filed April 30, 2025, and Memorandum Opinion and Order (Doc. 90), filed March 31, 2025, and a copy of the docket entries.

The docket and appeal fee has been:

☒    Paid

☐    Paid in part

☐    Not paid

☐    Waived

Counsel for appellant is required to retrieve the appropriate forms for the appeal by referring to the United States Court of Appeals for the Tenth Circuit website at www.ca10.uscourts.gov, and referring to "Forms" located in the "Case Management" tab.

Sincerely,

MITCHELL R. ELFERS
Clerk of Court

By: Denisse Romero
Deputy Clerk

APPEAL,CONSENT,CONSOL,JAS01,LEADCS

# U.S. District Court
# United States District Court – District of New Mexico (Albuquerque)
# CIVIL DOCKET FOR CASE #: <u>1:21–cv–00427–KK–JMR</u>

| | |
|---|---|
| Mondragon v. Rio Rancho Public Schools Board of Education et al | Date Filed: 05/06/2021 |
| | Jury Demand: Both |
| Assigned to: Magistrate Judge Kirtan Khalsa | Nature of Suit: 440 Civil Rights: Other |
| Referred to: Magistrate Judge Jennifer M. Rozzoni | Jurisdiction: Federal Question |

Member cases:

    1:21–cv–00648–KK–JMR

    1:21–cv–00751–KK–JMR

Case in other court:  Thirteenth Judicial District Court,
                    21CV390

Cause: 28:1441 Petition for Removal– Civil Rights Act

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Mark Mondragon** | represented by | **Jason Bowles** |
| *on behalf of* | | Bowles Law Firm |
| D.M., a minor child | | 4811 Hardware Drive, N.E. |
| | | Bldg D, Suite 5 |
| | | Albuquerque, NM 87109 |
| | | 505–217–2680 |
| | | Fax: 505–217–2681 |
| | | Email: <u>jason@Bowles–Lawfirm.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Robert J. Gorence** |
| | | Gorence & Oliveros PC |
| | | 300 Central Avenue SW |
| | | Suite 1000E |
| | | Albuquerque, NM 87102 |
| | | 505–244–0214 |
| | | Fax: 505–244–0888 |
| | | Email: <u>gorence@golaw.us</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Todd J. Bullion** |
| | | Law Office of Todd J. Bullion |
| | | 4801 Lang Ave NE |
| | | Suite 110 |
| | | Albuquerque, NM 87109 |
| | | 505–494–4656 |
| | | Email: <u>todd@bullionlaw.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**Rio Rancho Public Schools, Board of
Education**

represented by **Jerry A. Walz**
Walz and Associates
133 Eubank NE
Albuquerque, NM 87123
505–275–1800
Fax: 505–275–1802
Email: jerryawalz@walzandassociates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**George Archuleta**
*in his Individual and Official capacity*

represented by **Carlos M. Quinones**
Quinones Law Firm LLC
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505
505–992–1515
Email: quinoneslaw@cybermesa.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2021 | 1 | NOTICE OF REMOVAL by George Archuleta from Thirteenth Judicial District Court, State of New Mexico, case number D–1329–CV–2021–00390. ( Filing Fee – Deliver Payment), filed by George Archuleta. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Civil Cover Sheet Attachment to Civil Cover Sheet, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Exhibit Exhibit D)(Quinones, Carlos) (Entered: 05/06/2021) |
| 05/06/2021 | | United States Magistrate Judge Stephan M. Vidmar and United States Magistrate Judge Kevin R. Sweazea assigned. (jg) (Entered: 05/06/2021) |
| 05/06/2021 | 2 | PLEASE TAKE NOTICE that this case has been randomly assigned to United States Magistrate Judge Stephan M. Vidmar to conduct dispositive proceedings in this matter, including motions and trial. Appeal from a judgment entered by a Magistrate Judge will be to the United States Court of Appeals for the Tenth Circuit. **It is the responsibility of the case filer to serve a copy of this Notice upon all parties with the summons and complaint.** *Consent is strictly voluntary, and a party is free to withhold consent without adverse consequences. Should a party choose to consent, notice should be made no later than 21 days after entry of the Order setting the Rule 16 Initial Scheduling Conference.* For e–filers, visit our Web site at www.nmd.uscourts.gov for more information and instructions. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jg) (Entered: 05/06/2021) |
| 05/07/2021 | 3 | Filing fee: $ 402.00, receipt number SF003386 (mjr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/10/2021) |

| 05/13/2021 | 4 | ANSWER to Complaint (Notice of Removal) *and Affirmative Defenses, and Jury Demand* by George Archuleta. (Quinones, Carlos) (Entered: 05/13/2021) |
|---|---|---|
| 05/13/2021 | 5 | NOTICE of Appearance by Jerry A. Walz on behalf of Rio Rancho Public Schools, Board of Education (Walz, Jerry) (Entered: 05/13/2021) |
| 05/13/2021 | 6 | ANSWER to Complaint (Notice of Removal) by Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 05/13/2021) |
| 05/19/2021 | 8 | INITIAL SCHEDULING ORDER: by Magistrate Judge Kevin R. Sweazea. Telephonic Rule 16(c) Hearing set for June 15, 2021 at 10:00 AM. Joint Status Report due by June 8, 2021. Unless otherwise notified by the Clerk or the Court a notice of consent or non−consent for this case to proceed before the trial Magistrate Judge should be submitted by each party no later than June 9, 2021. (atc) (Entered: 05/19/2021) |
| 05/28/2021 | 9 | NOTICE OF IMPENDING REASSIGNMENT: Pursuant to Fed. R. Civ. P. 73(b)(2), the parties are reminded that a magistrate judge was assigned as the trial judge in this matter under 28 U.S.C. 636(c). The parties are advised that this matter will be reassigned to a district judge as presiding judge if written consents from all parties have not been filed by **June 9, 2021**. The parties are free to withhold consent. *If you have already entered your consent, you need not resubmit.* (rh) (Entered: 05/28/2021) |
| 06/09/2021 | 11 | Joint Status Report *and Provisional Discovery Plan* by George Archuleta (Quinones, Carlos) (Entered: 06/09/2021) |
| 06/09/2021 | 12 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *for Rule 26 Initial Disclosures* (Walz, Jerry) (Entered: 06/09/2021) |
| 06/09/2021 | 13 | CERTIFICATE OF SERVICE by George Archuleta *of Rule 26(a)(1) Initial Disclosures* (Quinones, Carlos) (Entered: 06/09/2021) |
| 06/10/2021 | 14 | PLEASE TAKE NOTICE that this case has been reassigned to United States District Judge Martha Vazquez as the trial judge.<br><br>Under D.N.M.LR−Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges.<br><br>***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** Kindly reflect this change in your filings.<br><br>United States Magistrate Judge Stephan M. Vidmar no longer assigned to this case. [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jg) (Entered: 06/10/2021) |
| 06/14/2021 | 15 | NOTICE REGARDING DOCUMENT ENTRIES: Because this case has been reassigned to a district judge, please be advised that any documents filed by the parties under Rule 73(b) have been permanently removed from the docket. Document(s) removed: Nos. 7 and 10. [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (kg) (Entered: 06/14/2021) |
| 06/15/2021 | 16 | CERTIFICATE OF SERVICE by Mark Mondragon *Plaintiff's Initial Disclosurse* (Bowles, Jason) (Entered: 06/15/2021) |

| 06/15/2021 | 17 | Clerk's Minutes for proceedings held before Magistrate Judge Kevin R. Sweazea: Scheduling Conference held on 6/15/2021. (atc) (Entered: 06/15/2021) |
|---|---|---|
| 06/15/2021 | 18 | ORDER ADOPTING JOINT STATUS REPORT by Magistrate Judge Kevin R. Sweazea. (atc) (Entered: 06/15/2021) |
| 06/15/2021 | 19 | SCHEDULING ORDER: by Magistrate Judge Kevin R. Sweazea. Discovery due by November 26, 2021. Dispositive Motions due by December 27, 2021. Proposed Pretrial Order due to the Court by February 7, 2022. (atc) (Entered: 06/15/2021) |
| 06/15/2021 | 20 | ORDER by Magistrate Judge Kevin R. Sweazea. Settlement Conference set for November 9, 2021 at 09:00 AM via Zoom. Telephonic Status Conference set for October 14, 2021 at 09:30 AM. Consult Order for associated deadlines. (atc) (Entered: 06/15/2021) |
| 07/26/2021 | 21 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *for First Supplemental Rule 26 Disclosures* (Walz, Jerry) (Entered: 07/26/2021) |
| 08/18/2021 | 22 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *for their First Set of Interrogatories, Requests for Production and Requests for Admission to Plaintiff* (Walz, Jerry) (Entered: 08/18/2021) |
| 09/01/2021 | 23 | First MOTION for Extension of Time to Complete Discovery by Mark Mondragon. (Bullion, Todd) (Entered: 09/01/2021) |
| 09/15/2021 | 24 | RESPONSE to Motion re 23 First MOTION for Extension of Time to Complete Discovery filed by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 09/15/2021) |
| 09/23/2021 | 25 | CERTIFICATE OF SERVICE by Mark Mondragon *Plaintiff's 1st Set of Discovery to Defendant Rio Rancho Public Schools* (Gorence, Robert) Modified text on 9/24/2021 spelled out abbreviated text (gr). (Entered: 09/23/2021) |
| 09/24/2021 | 26 | CERTIFICATE OF SERVICE by Mark Mondragon *for Answer to Defendant Rio Rancho Public Schools, Board of Educations First Set of Interrogatories, Requests for Production, of Documents, and Requests for Admissions* (Bowles, Jason) (Entered: 09/24/2021) |
| 09/28/2021 | 27 | CERTIFICATE OF SERVICE by Mark Mondragon (Gorence, Robert) (Entered: 09/28/2021) |
| 10/06/2021 | 28 | ORDER by Magistrate Judge Kevin R. Sweazea granting 23 Motion to Modify Scheduling Order and Vacate Mediation. The pretrial deadlines, October 14, 2021 status conference, and November 9, 2021 settlement conference are VACATED. The parties shall submit an amended scheduling order by October 19, 2021. (atc) (Entered: 10/06/2021) |
| 10/19/2021 | 29 | Joint MOTION to Extend (other) *for Entry of Amended Scheduling Order* by Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 10/19/2021) |
| 10/20/2021 | 30 | ORDER by Magistrate Judge Kevin R. Sweazea GRANTING 29 Joint Motion for Amended Scheduling Order. Discovery due by June 15, 2022. Dispositive Motions due by July 27, 2022. Pretrial Order due to the Court 14 days after dispositive motions are resolved. (atc) (Entered: 10/20/2021) |
| 11/01/2021 | 31 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Second Supplemental Rule 26 Disclosures* (Walz, Jerry) (Entered: 11/01/2021) |

| 12/21/2021 | 32 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Answers and Responses to Plaintiff's First Set of Interrogatories, Requests for Production and Requests for Admission* (Walz, Jerry) (Entered: 12/21/2021) |
|---|---|---|
| 12/21/2021 | 33 | CERTIFICATE OF SERVICE by George Archuleta *of Answers, Responses and Objections to Plaintiff's First Interrogatories, Requests for Production and Requests for Admission* (Quinones, Carlos) (Entered: 12/21/2021) |
| 02/24/2022 | 34 | NOTICE by Mark Mondragon *Joint Notice of Settlement Conference* (Bowles, Jason) (Entered: 02/24/2022) |
| 02/25/2022 | 35 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Certificate of Service for RRPS 3rd Disclosure* (Walz, Jerry) (Entered: 02/25/2022) |
| 03/01/2022 | 36 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Certificate of Service for RRPS 4th Rule 26 Disclosure* (Walz, Jerry) (Entered: 03/01/2022) |
| 05/13/2022 | 37 | CERTIFICATE OF SERVICE by Mark Mondragon *of Additional Records to discovery responses* (Bowles, Jason) (Entered: 05/13/2022) |
| 05/17/2022 | 38 | CERTIFICATE OF SERVICE by Mark Mondragon *Plaintiffs Second Set of Interrogatories and Second Set Requests for Production to Defendant George Archuleta* (Bowles, Jason) (Entered: 05/17/2022) |
| 05/17/2022 | 39 | CERTIFICATE OF SERVICE by Mark Mondragon *Dr. Elizabeth Penlands curriculum vitae, fee schedule, and case testimony* (Bowles, Jason) (Entered: 05/17/2022) |
| 05/18/2022 | 40 | CERTIFICATE OF SERVICE by Mark Mondragon *Plaintiffs Second Set of Interrogatories, Requests for Production, and Request for Admissions to Defendant Rio Rancho Public Schools Board of Education* (Bowles, Jason) (Entered: 05/18/2022) |
| 06/20/2022 | 41 | CERTIFICATE OF SERVICE by George Archuleta *of Responses and Objections to Plaintiff's Second Requests for Production and Second Requests for Admission* (Quinones, Carlos) (Entered: 06/20/2022) |
| 06/22/2022 | 42 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *for Defendant Rio Rancho Public Schools' Answers and Responses to Plaintiff's Second Set of Interrogatories, Requests for Production and Second Set of Requests for Admissions to Defendant Rio Rancho Public Schools* (Walz, Jerry) (Entered: 06/22/2022) |
| 07/18/2022 | 43 | NOTICE by Rio Rancho Public Schools, Board of Education *of Settlement Conference* (Walz, Jerry) (Entered: 07/18/2022) |
| 09/12/2022 | 44 | Notice, Consent and Reference of a Civil Action to a Magistrate Judge. Case reassigned to Magistrate Judge Kevin R. Sweazea. (gr) (Entered: 09/12/2022) |
| 09/13/2022 | 45 | PLEASE TAKE NOTICE that this case has been reassigned to Magistrate Judge Kirtan Khalsa and Magistrate Judge Jerry H. Ritter as the trial and pretrial judges.<br><br>Under D.N.M.LR–Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges. |

|  |  | ***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** Kindly reflect this change in your filings.

Magistrate Judge Kevin R. Sweazea no longer assigned to this case. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (dr) (Entered: 09/13/2022) |
|---|---|---|
| 11/04/2022 | 46 | Clerk's Minutes for proceedings held before Magistrate Judge John F. Robbenhaar: Telephone Pre–settlement Status Conference held on 10/13/2022 at 9:30 a.m. (ajp) (Entered: 11/04/2022) |
| 11/07/2022 | 47 | Clerk's Minutes for proceedings held before Magistrate Judge John F. Robbenhaar: Settlement Conference held on 11/4/2022. The case did not settle. (ajp) (Entered: 11/07/2022) |
| 12/07/2022 | 48 | Joint MOTION to Consolidate Cases by Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 12/07/2022) |
| 12/08/2022 | 49 | ORDER CONSOLIDATING CASES by Magistrate Judge Kirtan Khalsa. The parties' Joint Motion to Consolidate (Doc. 48) is granted. *Montoya v. Rio Rancho Public Schools Board of Education, et al.*, Civ. No. 21–648 KK/JHR, and *Salazar v. Rio Rancho Public Schools Board of Education, et al.*, Civ. No. 21–751 KK/JHR, shall be consolidated with the instant case for purposes of discovery, pretrial matters, and trial. The instant case shall be the lead case. Pending further order, all future filings shall be made in the lead case only. (kmt) (Entered: 12/08/2022) |
| 01/12/2023 | 50 | Joint MOTION for Amended Scheduling Order by Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 01/12/2023) |
| 01/13/2023 | 51 | ORDER by Magistrate Judge Jerry H. Ritter granting 50 Joint Motion for Amended Scheduling Order. (sjl) (Entered: 01/13/2023) |
| 02/22/2023 | 52 | PLEASE TAKE NOTICE that this case has been reassigned to Magistrate Judge Jennifer M. Rozzoni as the pretrial judge.

Under D.N.M.LR–Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges.

***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** Kindly reflect this change in your filings.

Magistrate Judge Jerry H. Ritter no longer assigned to this case. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bc) (Entered: 02/22/2023) |
| 03/15/2023 | 53 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Defendants' Joint Expert Witness Disclosures* (Walz, Jerry) (Entered: 03/15/2023) |
| 04/07/2023 | 54 | CERTIFICATE OF SERVICE by Rio Rancho Public Schools, Board of Education *Expert Report of Fred K. Radosevich* (Walz, Jerry) (Entered: 04/07/2023) |
| 04/26/2023 | 55 | ORDER SETTING TELEPHONIC TRIAL SCHEDULING CONFERENCE by Magistrate Judge Kirtan Khalsa. A Telephonic Trial Scheduling Conference is set for |

| | | |
|---|---|---|
| | | **5/9/2023, at 9:30 a.m.** before Judge Khalsa. The conference will address the scheduling of trial and other pretrial hearings and deadlines. Counsel are to call Judge Khalsa's AT&T Conference Line at (877) 848–7030 and enter the Code 7324132 to connect to the proceedings. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (am) (Entered: 04/26/2023) |
| 05/09/2023 | 56 | Minutes for proceedings held before Magistrate Judge Kirtan Khalsa: Telephonic Trial Scheduling Conference held on 5/9/2023. (am) (Entered: 05/09/2023) |
| 05/09/2023 | 57 | NOTICE OF CIVIL JURY TRIAL before Magistrate Judge Kirtan Khalsa. Jury Trial set for **2/26/2024 through 3/1/2024** in Albuquerque – 480 Chama Courtroom before Magistrate Judge Kirtan Khalsa. Pretrial Conference set for **2/12/2024 at 09:30 AM** in Albuquerque – 480 Chama Courtroom before Judge Khalsa. Order Setting Jury Trial, with pretrial deadlines, will follow. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (am) (Entered: 05/09/2023) |
| 05/09/2023 | 58 | ORDER SETTING JURY TRIAL by Magistrate Judge Kirtan Khalsa. Jury Trial set for **2/26/2024 through 3/1/2024** in Albuquerque – 480 Chama Courtroom before Magistrate Judge Kirtan Khalsa. Pretrial Conference set for **2/12/2024 at 09:30 AM** in Albuquerque – 480 Chama Courtroom before Judge Khalsa. See Order for pretrial deadlines. (am) (Entered: 05/09/2023) |
| 08/18/2023 | 59 | Unopposed MOTION to Extend (other) *Deadline for Pre–Trial Motions* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 08/18/2023) |
| 08/18/2023 | 60 | ORDER granting 59 Motion to Extend Pre–Trial Motions Deadline by Magistrate Judge Jennifer M. Rozzoni. Motions due by 9/4/2023. (kms) (Entered: 08/18/2023) |
| 09/01/2023 | 61 | Unopposed MOTION to Extend (other) *for Leave to File Defendants' Joint Statement of Undisputed Material Facts and Attach Up To 100 Pages of Exhibits* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 09/01/2023) |
| 09/05/2023 | 62 | Unopposed MOTION to Extend (other) *Deadline for Pre–Trial Motions* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 09/05/2023) |
| 09/05/2023 | 63 | ORDER by Magistrate Judge Jennifer M. Rozzoni granting 62 Unopposed Motion to Extend Time to File Pre–Trial Motions. Pretrial motions due 9/11/2023. (ccp) (Entered: 09/05/2023) |
| 09/05/2023 | 64 | ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE DEFENDANTS' JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS AND ATTACH UP TO 100 PAGES OF EXHIBITS by Magistrate Judge Kirtan Khalsa. Defendants may file a pleading entitled Defendants' Joint Statement of Undisputed Material Facts in support of their Joint Motion for Summary Judgment as to the state tort claims as well as Defendant Archuleta's separate Motion for Summary Judgment as to the constitutional claims asserted against him on the issue of qualified immunity. Defendants may also attach up to 100 pages of exhibits for their Joint Statement of Undisputed Material Facts. (am) (Entered: 09/05/2023) |
| 09/11/2023 | 65 | NOTICE by George Archuleta, Rio Rancho Public Schools, Board of Education *of Defendants' Joint Statement of Undisputed Material Facts* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit |

| | | G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O, # <u>16</u> Exhibit P, # <u>17</u> Exhibit Q) (Walz, Jerry) (Entered: 09/11/2023) |
|---|---|---|
| 09/11/2023 | <u>66</u> | MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I* by George Archuleta. (Quinones, Carlos) (Entered: 09/11/2023) |
| 09/11/2023 | <u>67</u> | Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 09/11/2023) |
| 09/12/2023 | <u>68</u> | NOTICE by George Archuleta, Rio Rancho Public Schools, Board of Education re <u>65</u> Notice (Other), <u>67</u> Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity*, <u>66</u> MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I of Errata* (Walz, Jerry) (Entered: 09/12/2023) |
| 09/15/2023 | <u>69</u> | Unopposed MOTION to Stay *Discovery Pending Determination on Defendant Archuleta's Motion for Summary Judgment on Basis of Qualified Immunity on Count I* by George Archuleta. (Quinones, Carlos) (Entered: 09/15/2023) |
| 09/18/2023 | <u>70</u> | NOTICE OF WITHDRAWAL OF DOCUMENT as to document <u>69</u> Motion to Stay by George Archuleta (Quinones, Carlos) (Entered: 09/18/2023) |
| 10/20/2023 | <u>71</u> | Joint MOTION to Vacate <u>58</u> Order, *Trial Date* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 10/20/2023) |
| 10/20/2023 | <u>72</u> | ORDER GRANTING JOINT MOTION TO VACATE TRIAL DATE by Magistrate Judge Kirtan Khalsa. The parties' Joint Motion to Vacate Trial Date (Doc. 71) is granted. The trial set for February 26, 2024, is vacated. The Court will reset the trial date as necessary after deciding Defendants' dispositive motions. (kmt) (Entered: 10/20/2023) |
| 10/20/2023 | 73 | ORDER VACATING PRETRIAL CONFERENCE AND DEADLINES by Magistrate Judge Kirtan Khalsa. The Pretrial Conference previously set for 2/12/2024, and the pretrial deadlines set forth in the Court's Order Setting Jury Trial (Doc. 58), are hereby VACATED, to be reset as necessary after Defendants' dispositive motions are resolved. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (kmt) (Entered: 10/20/2023) |
| 01/25/2024 | <u>74</u> | Unopposed MOTION PLAINTIFFS UNOPPOSED MOTION FOR LEAVE TO FILED PLAINTIFFS JOINT STATEMENTS OF UNDISPUTED MATERIAL FACTS, ATTACH UP TO 150 PAGES OF EXHIBITS, AND FOR PAGE LIMIT EXTENSIONS by Mark Mondragon. (Bullion, Todd) (Entered: 01/25/2024) |
| 01/26/2024 | <u>75</u> | ORDER by Magistrate Judge Kirtan Khalsa granting <u>74</u> Unopposed MOTION PLAINTIFFS UNOPPOSED MOTION FOR LEAVE TO FILE PLAINTIFFS JOINT STATEMENTS OF UNDISPUTED MATERIAL FACTS, ATTACH UP TO 150 PAGES OF EXHIBITS, AND FOR PAGE LIMIT EXTENSIONS by Mark Mondragon. (eh) (Entered: 01/26/2024) |
| 01/26/2024 | <u>77</u> | RESPONSE in Opposition re <u>66</u> MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I* filed by Mark Mondragon. (Bullion, Todd) (Entered: 01/26/2024) |
| 02/09/2024 | <u>78</u> | NOTICE *of Extension of Time to File Replies* re <u>76</u> Notice (Other) and <u>77</u> Response in Opposition to Motion by George Archuleta, Rio Rancho Public Schools, Board of |

| | | Education (Walz, Jerry) Modified text on 2/12/2024 (eh). (Entered: 02/09/2024) |
|---|---|---|
| 02/28/2024 | 79 | NOTICE by George Archuleta, Rio Rancho Public Schools, Board of Education re 76 Notice (Other),, 77 Response in Opposition to Motion *of Extension of Time to File Replies* (Walz, Jerry) (Entered: 02/28/2024) |
| 03/21/2024 | 80 | NOTICE by George Archuleta, Rio Rancho Public Schools, Board of Education re 65 Notice (Other), 76 Notice (Other),, 67 Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity*, 77 Response in Opposition to Motion, 66 MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I Extension of Time for Plaintiffs' to Respond to Doc. 67 and Extension for Defendants' to File Replies in Support of Docs. 65, 66, 67* (Walz, Jerry) (Entered: 03/21/2024) |
| 04/05/2024 | 81 | RESPONSE in Opposition re 67 Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity* filed by Mark Mondragon. (Attachments: # 1 Exhibit) (Bullion, Todd) (Entered: 04/05/2024) |
| 05/17/2024 | 82 | Unopposed MOTION to Extend (other) *Page Limits in Reply Briefs by Defendants* by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 05/17/2024) |
| 05/21/2024 | 83 | ORDER by Magistrate Judge Kirtan Khalsa granting 82 Unopposed MOTION to Extend (other) Page Limits in Reply Briefs by Defendants. (eh) (Entered: 05/21/2024) |
| 05/22/2024 | 84 | *Defendants' Joint* REPLY *to Plaintiffs' Joint Statement of Undisputed Facts* re 76 Notice (Other),, filed by George Archuleta, Rio Rancho Public Schools, Board of Education. (Attachments: # 1 Exhibit R, # 2 Exhibit S, # 3 Exhibit T, # 4 Exhibit U) (Walz, Jerry) (Entered: 05/22/2024) |
| 05/22/2024 | 85 | REPLY to Response to Motion re 66 MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I* filed by George Archuleta. (Quinones, Carlos) (Entered: 05/22/2024) |
| 05/22/2024 | 86 | REPLY to Response to Motion re 67 Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity* filed by George Archuleta, Rio Rancho Public Schools, Board of Education. (Walz, Jerry) (Entered: 05/22/2024) |
| 05/23/2024 | 87 | NOTICE of Briefing Complete by George Archuleta, Rio Rancho Public Schools, Board of Education re 67 Joint MOTION for Summary Judgment *on the Basis of Governmental Immunity* filed by George Archuleta, Rio Rancho Public Schools, Board of Education, 66 MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I* filed by George Archuleta (Walz, Jerry) (Entered: 05/23/2024) |
| 03/18/2025 | 88 | **WITHDRAWN**MEMORANDUM OPINION AND ORDER by Magistrate Judge Kirtan Khalsa granting in part and denying in part 67 Defendants Archuleta's and Rio Rancho Public Schools Board of Education's Joint Motion and Memorandum for Summary Judgment. (jg) requested withdrawn by chambers Modified on 3/19/2025 (dr). (Entered: 03/18/2025) |
| 03/19/2025 | 89 | AMENDED MEMORANDUM OPINION AND ORDER by Magistrate Judge Kirtan Khalsa granting in part and denying in part 67 Defendants Archuleta's and Rio Rancho Public Schools Board of Education's Joint Motion and Memorandum for Summary Judgment. (dr) (Entered: 03/19/2025) |
| 03/31/2025 | 90 | MEMORANDUM OPINION AND ORDER Denying 66 MOTION for Summary Judgment *on the Basis of Qualified Immunity on Count I* by Magistrate Judge Kirtan |

| | | Khalsa. (bc) Modified as to Document Type on 4/9/2025 (kw). (Entered: 03/31/2025) |
|---|---|---|
| 04/07/2025 | 91 | ORDER by Magistrate Judge Jennifer M. Rozzoni. Status Conference set for 4/17/2025 at 10:00 AM in Albuquerque – Telephonic Hearing/Conference before Magistrate Judge Jennifer M. Rozzoni. (ccp) (Entered: 04/07/2025) |
| 04/21/2025 | 92 | Clerk's Minutes for proceedings held before Magistrate Judge Jennifer M. Rozzoni: Status Conference held on 4/17/2025. (ccp) (Entered: 04/21/2025) |
| 04/30/2025 | 93 | NOTICE OF APPEAL as to 90 Memorandum Opinion and Order by George Archuleta. (Filing Fee – Online Payment) (Attachments: # 1 Exhibit Exhibit A)(Quinones, Carlos) (Entered: 04/30/2025) |
| 04/30/2025 | | Filing Fee Received: $ 605 receipt number ANMDC–9922339 re 93 Notice of Appeal filed by George Archuleta (Payment made via Pay.gov)(Quinones, Carlos) (Entered: 04/30/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARK MONDRAGON,

 Plaintiff,

vs.            Civ. No. 21-427 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

 Defendants,

*and*

SARAH MONTOYA,

 Plaintiff,

vs.            Civ. No. 21-648 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

 Defendants,

*and*

ANGELA SALAZAR,

 Plaintiff,

vs.            Civ. No. 21-751 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

 Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

 Before the Court is Defendant George Archuleta's Motion for Summary Judgment on the

Basis of Qualified Immunity on Count I (Doc. 66)[1] ("Motion"), filed on September 11, 2023. Plaintiffs filed a response in opposition to the Motion on January 26, 2024, and Defendant Archuleta filed a reply in support on May 22, 2024. (Docs. 77, 85.) The Court, having considered the parties' submissions, the record, and the relevant law, FINDS that the Motion is not well-taken and should be DENIED.

## INTRODUCTION

In each of these three consolidated cases, Plaintiff is the parent of a student who attended V. Sue Cleveland High School ("Cleveland") in Rio Rancho, New Mexico. (Doc. 1-3 at 7; Civ. No. 21-648, Doc. 1-3 at 1-2; Civ. No. 21-751, Doc. 1-3 at 2.) Plaintiffs allege that Defendant George Archuleta unlawfully touched the student Plaintiffs' genitals while searching them for contraband.[2] (*Id.*) At the time of the alleged unlawful searches, Defendant Rio Rancho Public Schools Board of Education ("RRPS") employed Defendant Archuleta as a campus security aide at Cleveland. (*Id.*; Docs. 65-3, 65-4, 65-5.)

In 2021, each Plaintiff filed a lawsuit in state court, asserting claims against Defendants under 42 U.S.C. § 1983 (Count I) and the New Mexico Tort Claims Act (Counts II, III, and IV). (Doc. 1-3 at 6-13; Civ. No. 21-648, Doc. 1-3; Civ. No. 21-751, Doc. 1-3.) Defendants removed the cases to this Court, where they were consolidated on the parties' joint request. (Docs. 1, 48, 49; Civ. 21-648, Doc. 1; Civ. No. 21-751, Doc. 1.)

---

[1] Except as otherwise noted, all citations to the record are to documents filed in the lead case, *Mondragon v. Rio Rancho Public Schools, et al.*, Civ. No. 21-427 KK/JMR.

[2] All three of the student Plaintiffs appear to have been minors at the time of the incidents forming the basis of Plaintiffs' complaints, not only because they were high school students, but also because they did not bring suit independently and have appeared in these actions only by their initials. *See* Fed. R. Civ. P. 5.2(a)(3) (electronic or paper filing that identifies minor "may include only … the minor's initials"). However, the record reflects that at least two of the student Plaintiffs, D.M. and J.M., are now adults. (Doc. 65-10 at 2; Doc. 65-11 at 2, 12.) The Court therefore refers to these parties as the "student Plaintiffs" rather than the "minor Plaintiffs."

2

In the present Motion, Defendant Archuleta seeks summary judgment on Count I of Plaintiffs' complaints. (Doc. 66.) In Count I, Plaintiffs bring claims for "Violation of 42 U.S.C. [§] 1983, Illegal Search and Seizure under the Fourth Amendment Against Defendant Archuleta in his Individual Capacity" based on Defendant's allegedly inappropriate searches of the student Plaintiffs. (Doc. 1-3 at 9-10; Civ. 21-648, Doc. 1-3 at 3-4; Civ. 21-751, Doc. 1-3 at 4-5.) Defendant argues that he is entitled to qualified immunity from these claims because Plaintiffs cannot show that he violated the student Plaintiffs' clearly established constitutional rights. (Doc. 66.)

## LEGAL STANDARDS

In relevant part, 42 U.S.C. § 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects … any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

A public official sued under Section 1983 may raise the affirmative defense of qualified immunity. *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1307 (10th Cir. 2015). When a defendant raises this defense in a motion for summary judgment, the burden shifts to the plaintiff to show that (1) the defendant's actions violated the plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear

the traditional burden of the movant for summary judgment." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018).

Courts may address the two prongs of the qualified-immunity test in any order. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016). In determining whether the plaintiff has satisfied this test, courts "ordinarily accept the plaintiff's version of the facts," provided it "find[s] support in the record." *Halley*, 902 F.3d at 1144; *A.M.*, 830 F.3d at 1136. Facts that the record supports must be construed "in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

A constitutional right is clearly established under the second prong of the qualified-immunity test if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). In general, for a right to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other Circuits must show that the right is as the plaintiff maintains. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation marks omitted). "[P]recedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotation marks and emphases omitted).

Nevertheless, the qualified immunity "analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct [at issue] for the official[] to have been on notice of clearly established law." *Luethje v. Kyle*, — F.4th —, 2025 WL 851085, at *4 (10th Cir. Mar. 19, 2025). "A case directly on point is not necessary if existing precedent has placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)) (brackets and quotation marks omitted). In other words, "[g]eneral

4

statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley*, 902 F.3d at 1149 (quotation marks omitted).

Further, "[t]here can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Doe*, 912 F.3d at 1289. "After all, some things are so obviously unlawful that they don't require detailed explanation, and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Rosales v. Bradshaw*, 72 F.4th 1145, 1156 (10th Cir. 2023) (brackets omitted). "[T]he most obviously unconstitutional conduct" should not be "the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Id.* at 1156-57. "Thus, qualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional." *Id.* at 1157.

As noted above, if the plaintiff satisfies both prongs of the qualified-immunity test, then the defendant must take up the usual burden of a summary judgment movant. *Halley*, 902 F.3d at 1144. Generally, a party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). When the nonmovant would bear the burden of proof at trial, the movant may meet its initial summary judgment burden by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the movant meets its initial summary judgment burden, "the burden then shifts

to the nonmovant," *id.*, who must "go beyond the pleadings and set forth specific facts that would

be admissible in evidence in the event of trial from which a rational trier of fact could find for the

nonmovant … by reference to affidavits, deposition transcripts, or specific exhibits incorporated

therein." *Adler*, 144 F.3d at 671 (quotation marks omitted).

A factual "dispute is genuine when the evidence is such that a reasonable [factfinder] could

return a verdict for the nonmoving party, and a fact is material when it might affect the outcome

of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th

Cir. 2016) (quotation marks and brackets omitted). Only material factual disputes preclude the

entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138,

1148 (10th Cir. 2000). If the nonmovant demonstrates a genuine dispute as to material facts, the

Court views the facts in the light most favorable to the nonmovant. *Ricci v. DeStefano*, 557 U.S.

557, 586 (2009). However, the Court will not draw "unreasonable inferences that are unsupported

by the record." *Est. of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017).

## ANALYSIS

### I.     Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' claims that he violated the student Plaintiffs' clearly established Fourth Amendment rights.

In pertinent part, the Fourth Amendment to the United States Constitution provides that

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth

Amendment's prohibition against unreasonable searches and seizures applies to public school

officials' searches of students. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). However, school

officials need neither a warrant nor probable cause to search a student under their authority. *Id.* at

6

340-41. Rather, "the legality of a search of a student … depend[s] simply on the reasonableness, under all the circumstances, of the search."[3] *Id.* at 341.

For any search to be reasonable, it must be (1) "justified at its inception," and (2) conducted in a way that is "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* Ordinarily, a school official's search of a student is justified at its inception when the official has "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."[4] *Id.* at 341-42. To satisfy this standard, the official needs more than an "inchoate and unparticularized suspicion or 'hunch,'" but less than an "absolute certainty." *Id.* at 346. In other words, the official must have "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009). A school official's search of a student is permissible in scope, in turn, when it is conducted in a way that is "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342.

However, a school official's search of a student that "expose[s]" the student's "pelvic area to some degree" is "categorically distinct, requiring distinct elements of justification." *Safford*, 557 U.S. at 374; *see also A.M.*, 830 F.3d at 1161 ("[A] higher level of justification is necessary to proceed with a search that will expose a student's intimate areas."). In *Safford*, public school

---

[3] In light of this "special needs" exception to the Fourth Amendment's usual warrant and probable-cause requirements, the Court exercises considerable caution in citing to precedents involving non-school searches in this Memorandum Opinion and Order. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995).

[4] The Supreme Court has found that individualized suspicion is not always necessary for a school search to be reasonable, upholding a school district policy requiring student athletes to submit to routine drug testing in light of these students' "decreased expectation of privacy, the relative unobtrusiveness of the search, and the severity of the need met by the search." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664–65 (1995). However, Defendant Archuleta has not shown that the factors listed in *Vernonia* justified the searches Plaintiffs challenge in these cases. (*See generally* Docs. 65, 66, 84, 85.) The Court therefore concludes that individualized suspicion was required for the at-issue searches to have been justified at their inception.

7

officials required a middle school student to undress down to her bra and underpants, pull her bra out and to the side and shake it, and pull out the elastic on her underpants. 557 U.S. at 368-69. This search was justified at its inception because it was based on individualized suspicion that the student was giving other students prescription ibuprofen and over-the-counter naproxen in violation of school policy. *Id.* at 373-74.

Nevertheless, the *Safford* Court found that the search violated the Fourth Amendment due to its scope. *Id.* at 376-77. The Court held that for a school official to be permitted to "make the quantum leap from outer clothes and backpacks to exposure of intimate parts," the official must have "reasonable suspicion of danger or of resort to underwear for hiding evidence of wrongdoing." *Id.* at 377. And in *Safford*, such suspicion was lacking. *Id.* at 375-77. In other words, "the content of the [school officials'] suspicion failed to match the degree of intrusion" of the search they conducted.[5] *Id.* at 375.

In so holding, the *Safford* Court noted the student plaintiff's "subjective expectation of privacy against" the kind of search she experienced, which was "inherent in her account of it as embarrassing, frightening, and humiliating." *Id.* at 374-75. The Court also acknowledged the objective reasonableness of the student's privacy expectation, noting that "adolescent vulnerability intensifie[d] the patent intrusiveness of the exposure." *Id.* at 375. The Court explained that "[t]he indignity of the search does not, of course, outlaw it, but it does implicate the rule of reasonableness as stated in *T.L.O.,* that 'the search as actually conducted be reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *T.L.O.*, 469 U.S. at 341) (brackets omitted).

---

[5] However, the *Safford* Court also held that the defendant school officials in that case were entitled to qualified immunity because some federal appellate courts had found analogous searches to be constitutional, and these appellate decisions were "numerous enough, with well-reasoned majority and dissenting opinions, to counsel doubt that [the Supreme Court was] sufficiently clear in [its] prior statement of law." *Safford*, 557 U.S. at 378-79.

Safford establishes that a school official must have reasonable grounds to suspect that a student possesses a dangerous item or has concealed evidence of wrongdoing in the groin area to be permitted to deliberately search the student's genitals. 557 U.S. at 377. It inexorably follows that such grounds must justify not only searches that expose the student's genitals to the official's sight, but also searches that expose the student's genitals, clothed or not, to the official's deliberate touch. *Id.* at 374, 377. Any reasonable official would understand that both of these types of exposure are unusually intrusive. The Court therefore finds that deliberately touching a student's genitals during a search without the grounds *Safford* identified is so obviously unlawful under the well-established constitutional principles stated in *Safford* and *T.L.O.* that any reasonable school official would know it violates the Fourth Amendment, even in the absence of Supreme Court or Tenth Circuit precedent directly on point.[6] *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42; *see Rosales*, 72 F.4th at 1156-57.[7]

While there is record evidence that Defendant Archuleta conducted numerous searches of the student Plaintiffs, the parties' briefing on the Motion specifically disputes whether seven of these searches—three of D.M., two of J.M., and two of L.M.—violated the Fourth Amendment. (*See generally* Docs. 65, 66, 76, 77, 84, 85.) Defendant Archuleta contends that the seven at-issue

---

[6] The Court's finding on this point applies only in the context presented in these cases as well as *Safford*, and *T.L.O.*, in which the purported purpose of the at-issue search is to enforce an adolescent student's compliance with laws and school rules. The Court does not address how *Safford* and *T.L.O.* might apply to searches of students that occur in other contexts.

[7] In addition to discussing *Safford* and *T.L.O.*, both sides cite to various federal district court decisions in debating the reasonableness of the searches Plaintiffs challenge. (*See, e.g.*, Doc. 66 at 15-16; Doc. 77 at 12-13; Doc. 85 at 10.) However, none of the cited district court cases are binding precedent, and none of them present facts sufficiently similar to the present matter to be helpful to the Court's analysis. Moreover, two of the cases predate the Supreme Court's 2009 decision in *Safford*, which provides the rule of law on which this Court's analysis turns. (*See* Doc. 66 at 15 (citing *H.Y. ex rel. K.Y. v. Russell Cnty. Bd. of Educ.*, 490 F. Supp. 2d 1174 (M.D. Ala. 2007)); Doc. 85 at 10 (citing *In re Josue T.*, 1999-NMCA-115, 989 P.2d 431).)

searches were proper because they were "justified by reasonable, individualized suspicion" that the student Plaintiffs possessed contraband or a weapon and that they were "reasonable in scope." (Doc. 66 at 12, 16, 20.) Plaintiffs, conversely, argue that the searches violated the student Plaintiffs' clearly established Fourth Amendment rights because they were not justified at their inception and their scope exceeded any purported justification. (Doc. 77 at 17-29.)

In taking these diametrically opposed positions, the parties present vastly different versions of events, among other things disputing whether Defendant Archuleta ever touched the student Plaintiffs' genitals and even whether some of the alleged searches happened at all. (*Compare generally* Docs. 65, 66, 84, *and* 85 *with* Docs. 76 *and* 77.) While a jury may ultimately resolve the parties' factual disputes in Defendant Archuleta's favor, in analyzing Defendant's qualified-immunity defense, the Court must accept Plaintiffs' version of events as true, provided there is record support for it, and must construe supported and undisputed facts in Plaintiffs' favor.[8] *A.M.*, 830 F.3d at 1136; *Thomson*, 584 F.3d at 1312. And of course, if Defendant's qualified-immunity defense fails, the existence of a genuine issue of material fact will preclude summary judgment. Fed. R. Civ. P. 56(a). The Court analyzes the constitutionality of the seven allegedly improper searches at issue in light of the foregoing legal principles.

**A.  Defendant Archuleta's Allegedly Inappropriate Searches of D.M.**

Defendant Archuleta's Motion addresses three searches during which D.M. claims that Defendant touched him inappropriately. The first two searches took place during D.M.'s freshman year, on or about February 21, 2019. (Doc. 65-1 at 14; Doc. 65-10 at 10; Doc. 76-8 at 4-6.) D.M.

---

[8] Defendant objects to the form of many of the facts in Plaintiffs' Joint Statement of Undisputed Facts. (Doc. 84 at 2-38; Doc. 85 at 2-3.) The Court finds that, although the form of Plaintiffs' facts is not perfect, it is not so flawed that the facts themselves should be disregarded, provided there is record support for them. *See generally Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1459 (10th Cir. 1996) ("Mere technicalities should not obstruct the consideration of a case on its merits.") (brackets and quotation marks omitted).

admits that, on that date, he and J.M. were fist-fighting in a school restroom. (Doc. 76-8 at 5.) Defendant Archuleta arrived, saw that D.M. had a black eye, and took him to the sophomore office. (*Id.* at 5-6.) Defendant did not suspect that D.M. had a weapon on his person.[9] (Doc. 76-4 at 14.)

D.M. gave the following account of the searches that followed. Defendant Archuleta first searched D.M. in the sophomore office with no one else present. (Doc. 76-8 at 4-6.) After D.M. emptied his pockets, Defendant felt around D.M.'s thighs and buttocks. (Doc. 65-10 at 10; Doc. 76-8 at 5, 12.) Then, with his hands in D.M.'s pockets, Defendant touched the tip of D.M.'s penis, made a "swirly motion" around it, and asked, "What's this?" (Doc. 76-8 at 5, 7.) He also touched D.M.'s buttocks through his clothing. (*Id.* at 12.) After this search, Defendant took D.M. to the nurse's office, where a school police officer ran a metal detector wand over D.M. (Doc. 65-10 at 10.) Defendant then searched D.M. a second time, again putting his hands in D.M.'s pockets and touching his penis. (*Id.*) No weapons or contraband were found on D.M.'s person. (*Id.*) Defendant Archuleta did not make skin-to-skin contact with D.M.'s genitals during either search. (*Id.* at 7-8, 10.) Nevertheless, the searches were "very traumatic" for D.M. and made him feel "[d]epressed," [d]istressed," and "[e]mbarrassed." (*Id.* at 17.)

Defendant Archuleta argues that his February 21, 2019 searches of D.M. were justified at their inception because he had "reasonable, individualized suspicion that D.M. possessed contraband and/or a weapon." (Doc. 66 at 12, 14.) In support, he points to undisputed evidence

---

[9] As further discussed below, Defendant Archuleta testified that he never suspected any of the student Plaintiffs of possessing a weapon on campus. (Doc. 76-4 at 14.) Similarly, RRPS Security Manager Don Mangin testified that he did not recall ever being made aware that any of the Plaintiffs were suspected of possessing a weapon on school grounds. (Doc. 76-1 at 11.) Also, Cleveland Principal Scott Affentranger testified that D.M. was never suspected of having a weapon on school grounds in any specific incident in which Mr. Affentranger was involved, and that he would have been advised if he was on campus and a student was suspected of having a weapon. (Doc. 76-5 at 5.) And, Assistant Principal Millan Baca testified that he did not suspect D.M. of possessing a weapon based on D.M.'s having been threatened by other students or D.M.'s inclusion in a group chat in which others discussed firearms and potential violence. (Doc. 76-3 at 6-7; *see also* Doc. 84-3 at 2.)

that D.M. was caught fighting with another student, *i.e.*, a "serious incident that was a violation of [Cleveland's] code of conduct," and that a shooting had occurred at the school a week earlier.[10] (*Id.*; *see* Doc. 65-1 at 17; Doc. 65-8 at 4; Doc. 65-13.) Defendant also submits evidence that, by September 2018, school administrators knew of a group chat in which D.M. was included but did not actively participate, in which others discussed "a handgun and the potential for physical violence." (Doc. 85 at 4; *see* Doc. 84-1 at 5; Doc. 84-2 at 3-5; Doc. 84-3 at 2; Doc. 84-4.) Also, a student in that chat told administrators "he had heard that a lot of boys were carrying guns at the time." (Doc. 84-3 at 2.) According to Defendant, "[u]nder these circumstances, … it was reasonable to believe that [D.M.] could have a weapon on his person that could be used on another student or on the campus security aide" on February 21, 2019. (Doc. 66 at 14.) Plaintiffs, in contrast, argue that the cited circumstances do not rise to the level of reasonable suspicion for the particular search at issue. (Doc. 77 at 17-18.)

Even accepting Plaintiffs' supported facts as true and construing in D.M.'s favor these and the facts the parties do not dispute, the record includes some level of objective justification for Defendant Archuleta's February 21, 2019 searches of D.M. In particular, Defendant undisputedly had reason to believe D.M. had just violated the law and school rules and engaged in physical violence by fighting with J.M. Thus, at least arguably, a limited search was justified to preserve evidence and ensure Defendant Archuleta's and others' safety while Defendant escorted D.M. to an administrator to be disciplined. Such a search would be analogous—though by no means identical—to a police officer's search incident to an arrest in terms of its justification. *Cf., e.g., Virginia v. Moore*, 553 U.S. 164, 176-77 (2008) ("[O]fficers may perform searches incident to constitutionally permissible arrests … to safeguard evidence, and … to ensure their safety during

---

[10] There is no record evidence that D.M. was involved in the shooting or that any school official suspected he was.

the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.") (quotation marks omitted); *see generally Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) ("[S]tudents within the school environment have a lesser expectation of privacy than members of the population generally.").

In arguing that Defendant's evidence of justification is nevertheless insufficient, Plaintiffs place particular weight on Defendant's testimony that he never suspected any of the student Plaintiffs of possessing a weapon on school grounds. (Doc. 77 at 18; *see* Doc. 76-4 at 14.) Of course, this evidence does not rule out the existence of reasonable grounds to suspect D.M. had a weapon on February 21, 2019, because a Fourth Amendment "reasonableness inquiry" is usually "objective," *i.e.*, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). Still, construed in Plaintiffs' favor, Defendant's testimony does logically support the inference that the facts and circumstances known to him did not constitute reasonable grounds to suspect D.M. had a weapon.

However, even if Plaintiffs were correct that Defendant's February 21, 2019 searches of D.M. did in fact lack adequate justification at the outset, they have failed to identify any Supreme Court or Tenth Circuit precedent that (1) supports their position and (2) either is directly on point or includes a general statement of the law that applies with obvious clarity.[11] (*See generally* Doc. 77.) Thus, they have not shown that these searches violated D.M.'s clearly established Fourth Amendment rights on the basis that they were unjustified at their inception. *See N.E.L. v. Douglas*

---

[11] Plaintiffs' citations to *Terry v. Ohio*, 392 U.S. 1 (1968), *Sibron v. New York*, 392 U.S. 40 (1968), and *United States v. King*, 990 F.2d 1552 (10th Cir. 1993), are inapposite because none of these cases involved the special-needs exception to the Fourth Amendment's warrant and probable-cause requirements applicable to a school official's search of a student. (*See* Doc. 77 at 11-12.) And Plaintiffs' frequent citations to *A.M.*, (*see, e.g., id.* at 14-16, 23-24), do not help them because in that case the Tenth Circuit held that the defendant school official's search of the student plaintiff was justified at its inception, and also reasonable in scope. *A.M.*, 830 F.3d at 1159, 1162.

*Cnty., Colo.*, 740 F. App'x 920, 929 (10th Cir. 2018) (on motion for qualified immunity, "it's the plaintiff's burden to identify the relevant clearly established law").

This leaves the question of whether the searches violated D.M.'s clearly established rights because they were objectively unreasonable in scope. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. Accepting D.M.'s testimony as true and construing this testimony and the undisputed facts in Plaintiffs' favor, the Court finds that the scope of these searches was unreasonable under clearly established law. Defendant Archuleta argues that the searches were reasonable in scope because any contact with D.M.'s genitals was "incidental or accidental" and "*de minimis*." (Doc. 66 at 16.) Yet, at his deposition, he did not testify that he touched D.M.'s—or indeed any of the student Plaintiffs'—genitals incidentally, accidentally, or minimally. Rather, he testified that: (1) he was trained to never pat down a student in the area between the waist and three inches above the knee; (2) he only searched D.M. once after D.M.'s fight with J.M., at Assistant Principal Millan Baca's direction, and he only searched D.M.'s "arms, his back down the middle, around his belt line, [and] his legs ... [t]hat was the extent of the search"; (3) he never searched D.M. without a witness present; and, (4) he never touched any student Plaintiff's genitals. (Doc. 65-6 at 3, 5-6, 9; Doc. 76-4 at 20.) In other words, he did not testify that the way he touched D.M.'s penis was reasonable; rather, he denied that he ever touched D.M.'s penis at all.

In addition, there is record evidence that, viewed in Plaintiffs' favor, would allow a reasonable factfinder to conclude that Defendant touched D.M.'s penis deliberately and for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect D.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area.[12] This

---

[12] Defendant does not identify any dangerous item other than a weapon that he claims he had reasonable grounds to suspect any of the student Plaintiffs possessed. (*See generally* Docs. 66, 85.) He does argue that he had reasonable grounds to suspect they possessed "contraband," (*id.*), but the contraband at issue appears to have been limited to

includes evidence that: (1) Defendant never suspected D.M. of possessing a weapon; (2) Defendant conducted the first search with no one else present in violation of school policy,[13] (Doc. 65-7 at 3; Doc. 76-1 at 6, 9; Doc. 76-4 at 15; Doc. 76-5 at 11); (3) Defendant touched D.M.'s penis twice on February 21, 2019, and a third time on March 5, 2020, as discussed below; (4) Defendant touched J.M.'s genitals on two occasions, as discussed in Section I.B., *infra*; (5) Defendant touched L.M.'s genitals on two occasions, as discussed in Section I.C., *infra*; (6) on a daily basis, Defendant stared at D.M., J.M., and L.M. in school hallways, told them to pull up their pants even though their pants were already pulled up, and threatened to search them, (Doc. 76-8 at 13); and, (7) Defendant called D.M. "hito" in a "weird" way many times, even though the two are not related,[14] (*id.* at 6, 16; Doc. 76-10 at 5). Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contacts with D.M.'s penis were not reasonably related to the objectives of the February 21, 2019 searches, were excessively intrusive, and violated D.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

Defendant Archuleta's third allegedly inappropriate at-issue search of D.M. took place the following school year, on March 5, 2020. It is undisputed that, the previous day at a school bus boarding area, Defendant saw D.M. put an item in his pocket and asked D.M. what it was. (Doc.

---

tobacco or nicotine vape products, and Defendant has failed to present evidence that such products, as a category, are sufficiently dangerous to justify a *Safford*-level search.

[13] Defendant is correct that evidence of a policy violation, without more, does not establish a constitutional violation or defeat qualified immunity. (Doc. 85 at 6 (citing *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984); *Jensen v. Garden*, 752 F. App'x 620, 626 (10th Cir. 2018)).) Here, however, Defendant's alleged violation of the school's policy requiring a witness to be present for searches of students supports the inference that Defendant knowingly and intentionally engaged in wrongful conduct that he did not want others to see.

[14] The Court takes judicial notice that "mi hijito" literally means "my little son" in Spanish. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); (*see also* Doc. 65-6 at 7 (according to Defendant Archuleta, "jito" means "[i]t's like son or a family member"); Doc. 65-10 at 14 (according to D.M., "hito" means "like you're an uncle and like you have your nephew and you call him hito").)

65-6 at 6; Doc. 65-10 at 6; Doc. 65-14 at 1-2.) Then, either D.M. showed him, or he searched D.M. and found, a nicotine vape product, which school policy prohibited students from having. (*Id.*; Doc. 65-8 at 4; Doc. 76-1 at 3, 9; Doc. 76-8 at 6.) Defendant Archuleta confiscated the vape product from D.M. and told him to report to Mr. Baca's office the next morning. (Doc. 65-6 at 6; Doc. 65-14 at 2.)

On the morning of March 5, 2020, D.M. reported to Mr. Baca's office as instructed. (Doc. 65-10 at 7; Doc. 65-14 at 2.) While Mr. Baca was interviewing D.M., D.M. repeatedly put his hands in his pockets, "digging around" in them and "trying to push something down." (Doc. 65-1 at 9-11.) Mr. Baca asked him to remove his hands from his pockets "numerous times," but D.M. refused to do so.[15] (*Id.*) Mr. Baca asked D.M. what was in his pockets, but D.M. did not answer. (*Id.*) Based on D.M.'s behavior, Mr. Baca suspected D.M. had a weapon or contraband in his pockets and directed Defendant Archuleta to search him.[16] (*Id.*; Doc. 65-6 at 6; Doc. 65-14 at 2.)

D.M. gave the following account of the search that followed. As Defendant Archuleta was beginning the search, D.M. said to Defendant, "[d]on't touch my dick." (Doc. 76-8 at 8.) Defendant Archuleta pulled a condom out of D.M.'s wallet, showed the condom to D.M., and stated "oh you're a little guy," referring to the size of D.M.'s penis. (Doc. 65-12 at 2; *see also* Doc. 76-8 at 7.) With his hands in D.M.'s pockets, Defendant Archuleta touched the tip of D.M.'s penis. (Doc. 65-10 at 10; Doc. 76-8 at 8, 11-12.) He also touched D.M.'s buttocks through his clothing. (Doc.

---

[15] Although Plaintiffs challenge the legal sufficiency of the reasons Mr. Baca gave for directing Defendant to search D.M., they do not dispute that D.M. repeatedly put his hands in his pockets, refused requests to remove them, and failed to answer when asked what was in them. (*See* Doc. 76 at 9 ¶ 19.)

[16] Again, although Plaintiffs challenge the reasonableness of Mr. Baca's suspicion, they have not identified any evidence that would create a genuine dispute regarding Mr. Baca's subjective motivation for directing Defendant Archuleta to search D.M. on March 5, 2020. (*See* Doc. 76 at 9.) Plaintiffs do argue that Mr. Baca testified he never suspected D.M. of having a weapon, but the evidence they cite does not fully support their argument. (*Id.*) Although Mr. Baca did testify that he did not suspect D.M. of having a weapon because D.M. had been threatened by other students, or because of D.M.'s inclusion in a group chat in which others discussed firearms and potential violence, (Doc. 76-3 at 6-7), this is of course different from testifying that he never suspected D.M. of having a weapon at all.

76-8 at 12.) Defendant did not find any weapons or contraband during this search. (Doc. 65-14 at 2.) Defendant did not make skin-to-skin contact with D.M.'s genitals. (Doc. 65-10 at 7-8, 10.)

Defendant Archuleta argues that his March 5, 2020 search of D.M. was justified at its inception because, based on D.M.'s behavior, Mr. Baca reasonably suspected that D.M. had a weapon or contraband in his pockets and was therefore justified in directing Defendant to search him. (Doc. 66 at 15.) Plaintiffs do not directly address this argument, instead asserting that D.M.'s possession of a vape product on school grounds on March 4, 2020, "cannot serve as the basis to search D.M. again the following day." (Doc. 77 at 18.)

Even accepting Plaintiffs' supported facts as true and viewing these and the undisputed facts in D.M.'s favor, Plaintiffs have failed to show that Defendant Archuleta's March 5, 2020 search of D.M. was unjustified at its inception under clearly established law. It is undisputed that Defendant Archuleta searched D.M. at Mr. Baca's direction; and, at least arguably, Mr. Baca had reasonable grounds to suspect that D.M. was concealing evidence of wrongdoing in his pockets. Indeed, not only did Mr. Baca observe D.M. digging around in his pockets and refusing to take his hands out of them or tell Mr. Baca what was in them, but also Mr. Baca knew D.M. had possessed vape products at school the day before, and on another occasion the previous school year. (Doc. 65-1 at 8.) Yet, Plaintiffs have failed to identify any Supreme Court or Tenth Circuit precedent that (1) supports their position that the search was nevertheless unjustified, and (2) either is directly on point or includes a general statement of the law that applies with obvious clarity. (*See generally* Doc. 77.) Thus, they have not met their burden to show that this search violated D.M.'s clearly established Fourth Amendment rights because it was unjustified at its inception. *T.L.O.*, 469 U.S. at 341-42; *N.E.L.*, 740 F. App'x at 929.

17

But again, a search that is justified at its inception may nevertheless violate the Fourth Amendment if it is carried out in an unreasonable way. *T.L.O.*, 469 U.S. at 341-42; *A.M*, 830 F.3d at 1160. And again, despite Defendant's argument that his contacts with D.M.'s penis were incidental, accidental, or *de minimis*, (Doc. 66 at 16), there is evidence that, viewed in the light most favorable to Plaintiffs, would tend to show that the scope of Defendant's March 5, 2020 search of D.M. was unreasonable because he deliberately touched D.M.'s penis for his own personal gratification, and not because he had reasonable grounds to suspect that D.M. possessed a weapon or was concealing evidence of wrongdoing in the vicinity of his genitals.[17] This evidence includes not only the evidence just discussed in relation to Defendant's February 21, 2019 searches of D.M., but also evidence that, on March 5, 2020, Defendant touched D.M.'s penis after (1) D.M. specifically told him not to, and (2) Defendant made a derogatory comment about D.M.'s penis size. Based on this evidence, a reasonable factfinder could conclude that Defendant's March 5, 2020 contact with D.M.'s penis was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated D.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For all of these reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of D.M.

**B.**     **Defendant Archuleta's Allegedly Inappropriate Searches of J.M.**

J.M. claims that Defendant Archuleta touched him inappropriately during two searches that occurred his sophomore year. (Doc. 76-10 at 5.) It is undisputed that, on October 3, 2019, J.M. and some of his friends "were supposed to fight another kid" but did not, because school "security

---

[17] In this regard, the Court notes that Defendant has not presented any evidence tending to show that he touched D.M.'s penis accidentally in the process of searching D.M.'s pockets. On the contrary, he denied that he ever touched any student Plaintiff's genitals at all, even accidentally. (Doc. 76-4 at 15, 20.)

intervened before it happened." (Doc. 65-17 at 2; *see* Doc. 65 at 15-16 ¶ 86; Doc. 76 at 10 ¶ 21.) Security camera footage showed J.M. at the scene of the anticipated fight. (*Id.*) The next day, J.M. was called to Principal Scott Affentranger's office in connection with this incident. (*Id.*) After Mr. Affentranger interviewed J.M., Mr. Baca asked Defendant Archuleta to search J.M. and his backpack. (Doc. 65-1 at 15; Doc. 65-6 at 8; Doc. 65-17 at 2.) Defendant's report regarding the search indicates that he found an electronic cigarette and a bottle of "E-Cig juice" in J.M.'s backpack. (Doc. 65-17 at 2.)

Defendant takes the position that his October 4, 2019 search of J.M. is the search during which J.M. claims Defendant touched him inappropriately the first time. (Doc. 66 at 20-21; Doc. 85 at 24.) However, J.M. testified that he was searched more than 50 times that school year, (Doc. 65-11 at 4), and, on the present record, his description of the October 4, 2019 search appears to be quite different from his description of the first search during which he claims Defendant touched him inappropriately. (*Compare* Doc. 76-10 at 6-8 *with* Doc. 84-1 at 4; *see also* Doc. 76 at 25 (observing that Defendant Archuleta's report regarding the October 4, 2019 search "does not appear to be referring to either of the two incidents in which he groped [J.M.]").) Accepting J.M.'s supported version of events as true, Defendant's October 4, 2019 search of J.M. and his first allegedly inappropriate search of J.M. were two separate searches.[18]

The record does not indicate the date of Defendant Archuleta's first allegedly inappropriate search of J.M., but as the Court has noted in a prior Memorandum Opinion, it may have occurred

---

[18] Even accepting Plaintiffs' supported facts as true and construing these and undisputed facts in Plaintiffs' favor, it seems likely that the October 4, 2019 search was justified at its inception because Plaintiffs present no evidence to dispute Defendant's evidence that (1) school officials observed J.M. at the scene of an anticipated fight a day earlier, and (2) when a school principal interviewed J.M. about the incident, he became "incredibly agitated" and would not "definitively answer" when asked if school officials would "find nothing on him." (Doc. 65-1 at 15; Doc. 65-17 at 2.) However, the Court need not resolve this issue because, as just discussed, if Plaintiffs' supported version of events is accepted as true, the October 4, 2019 search was not one of the allegedly inappropriate searches J.M. challenges in his lawsuit.

19

as early as October 2019. (Doc. 89 at 28.) J.M. testified that he was "brought out of class" to be searched due to an "incident[]" but he could not recall what the incident was. (Doc. 76-10 at 6.) Again, Defendant testified that he never suspected any of the student Plaintiffs of possessing a weapon on school grounds. (Doc. 76-4 at 14.)

At his deposition, J.M. gave the following account of this search. The search occurred in a hallway outside the security and nurses' offices, but all the doors to the hallway were closed and only J.M. and Defendant Archuleta were present. (Doc. 76-10 at 6, 8.) Defendant Archuleta had J.M. take off his shoes, take out the insoles, and flip his waistband inside out, and checked his socks. (*Id.* at 6.) Defendant then told J.M. to turn around and put his hands in J.M.'s pockets. (*Id.*) Defendant asked J.M. if he was wearing shorts under his pants and told him to take them off if he was. (*Id.*) J.M. responded that he did not feel comfortable doing that, and Defendant Archuleta "kind of got mad." (*Id.*) Continuing the search, Defendant patted up J.M.'s left leg. (*Id.*) J.M. noticed Defendant "getting really high on [his] thigh" and was then "kind of in shock" to feel Defendant touching his left testicle over his pants. (*Id.* at 3, 6-7.) He froze as Defendant remained in contact with his testicle for a few seconds. (*Id.* at 7.) The contact made J.M. feel "very uncomfortable," "disgusting," and "dirty." (*Id.* at 8.) Based on his own knowledge of human interactions, J.M. got the "vibe" that Defendant was "trying to approach" him "in a sexually inappropriate manner." (*Id.* at 9.)

At his deposition, Defendant Archuleta denied that he ever searched J.M. with no one else present. (Doc. 65-6 at 10.) He also denied that he ever touched J.M.'s genitals. (*Id.* at 9; Doc. 76-4 at 20.) Nevertheless, Defendant argues that the search to which J.M. testified was justified at its inception because Defendant had "reasonable, individualized suspicion that [J.M.] possessed contraband and/or weapons." (Doc. 66 at 20.) In support of this contention, Defendant points to

20

evidence that: (1) in the fall of 2019, school officials had a "heightened concern regarding the potential for school violence" and were "incredibly worried that there would be a shooting at school"; and, (2) J.M. was "believed to be involved, or peripherally involved, with a group of boys that was causing the concern for potential violence on campus."[19] (Doc. 65-1 at 17; Doc. 66 at 20-21.) In response, Plaintiffs argue that these general concerns do not rise to the level of reasonable, individualized suspicion to search J.M. on the occasion at issue. (Doc. 77 at 23.)

It is certainly plausible that, without more, general concerns about school violence, or even more particular concerns that J.M. might become involved in such violence in the future, do not rise to the level of reasonable, individualized suspicion to search J.M. indiscriminately. Nevertheless, because Defendant has raised the defense of qualified immunity on summary judgment, Plaintiffs bear the burden of presenting cognizable evidence to show that Defendant's first allegedly inappropriate search of J.M. was unjustified at its inception under clearly established law. *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088. And, on the present record, Plaintiffs have not met that burden because J.M. testified that something precipitated the search but he cannot recall what it was, and Plaintiffs have identified no other evidence to fill the gap in J.M.'s memory. Thus, Plaintiffs have not shown that the search violated J.M.'s clearly established Fourth Amendment rights on the basis that it was unjustified at its inception.

However, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that the search was unreasonable in scope because Defendant deliberately touched J.M.'s testicle for his own personal gratification, and not accidentally or because he had reasonable grounds to

---

[19] Cleveland officials' concerns about school violence focused on a feud between two students, R.R. and X.D., whose friend groups had been in "quite a few fights," mostly off campus. (Doc. 76-3 at 8-9.) Based on reports from "students" and his own observation that R.R. and J.M. were "very close," Mr. Baca believed that if there was a fight between R.R. and X.D. on campus, J.M. would "back up" R.R. (*Id.* at 9-10.)

21

suspect J.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area. In addition to the evidence tending to show that Defendant's searches of D.M. were unreasonable in scope, as discussed in Section I.A., *supra*, this includes evidence that: (1) Defendant denied touching J.M.'s genitals accidentally; (2) Defendant did not suspect J.M. of possessing a weapon; (3) Defendant conducted the search with no one else present; (4) Defendant tried to get J.M. to take off his pants and shorts and became angry when J.M. said he was not comfortable doing that; (5) Defendant's contact with J.M.'s testicle persisted for a few seconds; (6) based on J.M.'s own knowledge of human interactions, he got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way; (7) Defendant touched J.M.'s genitals again a few weeks to a month later, as discussed below; and, (8) Defendant also tried to touch J.M. inappropriately on two subsequent occasions and failed only because J.M. physically prevented the contact, (Doc. 76-10 at 11-12). Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contact with J.M.'s testicle was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated J.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

A few weeks or a month after his first allegedly inappropriate search of J.M., Defendant Archuleta searched J.M. again. (Doc. 76-10 at 8.) J.M. gave the following account of this search. J.M. was "brought out of class" for this search due to an "incident[]" but cannot recall what the incident was. (*Id.* at 6, 8.) Defendant conducted the search in a hallway outside the security and nurses' offices, with all the doors to the hallway closed and no one but J.M. and Defendant Archuleta present. (*Id.* at 9.) After searching J.M.'s backpack, Defendant Archuleta told J.M. to flip his waistband and looked in his socks. (*Id.*) Defendant performed a "leg to leg pat down, and then out of nowhere" he "grabbed between [J.M.'s] legs" and "essentially tried to grab everything,"

not "just [J.M.'s] left testicle." (*Id.*) Defendant's hand stayed "on [J.M.'s] crotch" for "[a] few seconds." (*Id.* at 10.) J.M. then turned to look at Defendant and saw that he "had a really weird look on his face," like a "smirk." (*Id.* at 9.) Again, based on his own knowledge of human interactions, J.M. "definitely" got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way. (*Id.*)

Defendant Archuleta argues that this second allegedly inappropriate search of J.M. was justified at its inception for the same reasons he claims the first allegedly inappropriate search was justified. (Doc. 66 at 20.) Defendant also points out that Plaintiffs bear the burden of presenting evidence of a Fourth Amendment violation but have "fail[ed] to identify and/or cite sufficient evidence from the record from which a reasonable jury could find … that the search [J.M.] describes was not justified at its inception." (Doc. 85 at 25.) Plaintiffs, in contrast, argue that the search was "unreasonable at its inception" because Defendant Archuleta has not explained why he searched J.M. on this occasion and "could not have been searching for a weapon … because he never suspected [J.M.] of having a weapon." (Doc. 77 at 25; *see* Doc. 76-4 at 14.)

Again, it is plausible that, without more, general concerns about school violence, and even particular concerns that J.M. might become involved in such violence at some future time, do not rise to the level of reasonable suspicion to search J.M. indiscriminately. But again, because Defendant has raised the defense of qualified immunity on summary judgment, Plaintiffs bear the burden of presenting cognizable evidence to show that Defendant's second allegedly inappropriate search of J.M. was unjustified at its inception under clearly established law. *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088. And again, on the present record, Plaintiffs have not met this burden because J.M. testified that something led to the search but he cannot recall what it was, and Plaintiffs have identified no other

evidence to fill the gap in J.M.'s memory. Thus, Plaintiffs have not shown that the search violated J.M.'s clearly established Fourth Amendment rights because it was unjustified at its inception.

Again, however, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that the search was excessive in scope because Defendant Archuleta deliberately touched J.M.'s genitals for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect J.M. possessed a weapon or had concealed evidence of wrongdoing in the vicinity of his genitals. In addition to the evidence just discussed regarding Defendant's first allegedly inappropriate search of J.M., this includes evidence that: (1) Defendant conducted the search with no one else present; (2) Defendant's contact with J.M.'s crotch persisted for a few seconds; (3) J.M. got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way; and, (4) immediately after Defendant grabbed his crotch, J.M. turned and saw Defendant smirking at him. Based on this evidence, a reasonable factfinder could conclude that Defendant's contact with J.M.'s genitals was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated J.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For all of the above reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of J.M.

### C.   Defendant Archuleta's Allegedly Inappropriate Searches of L.M.

L.M. claims that Defendant Archuleta touched him inappropriately during two searches his freshman year. (Doc. 76-11 at 7-11.) At his deposition, L.M. gave the following account of the first such search. L.M. could not recall "why [he] was pulled to the side or why [he] was caught – what [he] got caught doing" that led to the search. (*Id.* at 9.) However, as discussed in Sections I.A. and I.B., *supra*, Defendant never suspected that any student Plaintiff possessed a weapon on school

grounds. (Doc. 76-4 at 14.) Defendant searched L.M. in the presence of Assistant Principal Rudy Galindo. (Doc. 76-11 at 4, 7, 11.) During the search, Defendant Archuleta put his hands in L.M.'s pockets, felt around L.M.'s thigh, and then felt around L.M.'s penis and testicles for about five seconds. (*Id.* at 8-9.) Defendant "kind of cup[ped] over [L.M.'s] penis and [his] balls" and "fe[lt] them, fe[lt], and just fe[lt] [his] actual penis and . . . like, just grab[bed] it[.]" (*Id.* at 15.) L.M. protested by saying, "Whoa, dude," and taking a step back. (*Id.* at 7, 9-10.) Defendant "made a remark" in response, saying something like "Oh yeah. Whatever" in a "giggle" tone of voice. (*Id.* at 8.) Defendant did not find any contraband during this search. (*Id.* at 10.)

Regarding Defendant's second allegedly inappropriate search of L.M., in turn, L.M. testified to the following. Defendant searched L.M. after L.M. was caught vaping in a school restroom. (*Id.* at 10.) He took L.M. to Mr. Galindo's office, where Mr. Galindo told L.M. he was going to be searched to see if he had anything else on him. (*Id.* at 7, 10.) Defendant Archuleta directed L.M. to face the wall with his hands in the air and patted him down. (*Id.* at 10, 15.) While Defendant was "in [L.M.'s] pockets," he "grop[ed]" and "rubb[ed]" around L.M.'s genitals and "cupped over [his] penis and [his] balls and kind of felt them for a little."[20] (*Id.*) Asked how long Defendant was in contact with his genitals, L.M. responded, "three to five, maybe five seconds." (*Id.*) Although the contact Defendant made with L.M.'s genitals on both of these occasions did not cause L.M. physical pain and did not involve skin-to-skin contact, L.M. nevertheless found it "gross and disturbing." (*Id.* at 8, 15.)

---

[20] With respect to whether Defendant rubbed his genitals, L.M. testified that Defendant Archuleta was "I guess groping. I don't want to say, like – I don't know, rubbing on my penis. I guess it's that as well. I don't know. Groping, we'll call it groping … groping around my genitals, my – my penis." (Doc. 76-11 at 10.) Although this testimony is not wholly free of ambiguity, construed in Plaintiffs' favor, a reasonable factfinder could nevertheless rely on it to find that Defendant rubbed as well as groped L.M.'s genitals.

On the present record, Defendant Archuleta has not conceded that he ever searched L.M. in Mr. Galindo's office; and, at his deposition, Defendant denied that he ever touched L.M.'s genitals. (Doc. 65-6 at 7-9; Doc. 76-4 at 20.) Nevertheless, Defendant contends that the allegedly inappropriate searches L.M. described were justified by "reasonable, individualized suspicion that L.M. possessed contraband or vaping materials." (Doc. 66 at 16.) In support, Defendant points to evidence that: (1) he knew L.M. had been caught smoking an e-cigarette in a school locker room on August 29, 2019, (Doc. 65-6 at 7; Doc. 76-4 at 17; Doc. 76-2 at 11-13); (2) L.M. admitted to being caught vaping in a school restroom just before the second allegedly inappropriate search; and, (3) "[i]n their experience, school officials know that when a student is found to have one vaping device, the majority of [the] time those students also possess other … vaping devices," (Doc. 85 at 22; *see* Doc. 65-1 at 8). Defendant further argues that Plaintiffs have failed to meet their burden to show that the first allegedly inappropriate search was not justified at its inception, pointing to L.M.'s testimony that he could not recall "why [he] was pulled to the side or why [he] was caught – what [he] got caught doing" that led to the search. (Doc. 85 at 21-22 & n.7; *see* Doc. 76-11 at 9.)

Plaintiffs counter that both of Defendant's allegedly inappropriate searches of L.M. were unjustified at their inception. (Doc. 77 at 19-22.) However, L.M. admitted that he cannot recall what he did that led to the first search, and Plaintiffs have presented no other evidence to fill the gap in L.M.'s memory. And, L.M. admitted that the second search occurred because he was caught vaping on school grounds in violation of school rules. (Doc. 76-11 at 10.) Further, Plaintiffs have failed to cite to any Supreme Court or Tenth Circuit precedent that (1) supports their position that the second search was nevertheless unjustified at its inception, and (2) either is directly on point or applies with obvious clarity. Thus, on the present record, Plaintiffs have not met their burden to

show that either search was unjustified at its inception under clearly established law.[21] *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088.

As with Defendant's searches of D.M. and J.M., however, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that Defendant's allegedly inappropriate searches of L.M. were unreasonable in scope because Defendant deliberately touched L.M.'s genitals for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect L.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area. In addition to the evidence tending to show that Defendant's searches of D.M. and J.M. were unreasonable in scope, as discussed in Sections I.A. and I.B., *supra*, this includes evidence that: (1) Defendant testified that he never touched L.M.'s genitals accidentally; (2) Defendant never suspected L.M. of possessing a weapon; (3) Defendant touched L.M.'s genitals during two separate searches; (4) Defendant's contacts with L.M.'s genitals persisted for about five seconds each time; and, (5) when L.M. protested Defendant touching his genitals the first time by saying "Whoa, dude," Defendant responded by saying something like "Oh yeah. Whatever," in a "giggle" tone of voice. Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contacts with L.M.'s genitals were not reasonably related to the objectives of the searches at issue, were excessively intrusive, and violated L.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

---

[21] Plaintiffs argue that any suspicion the second inappropriate search would turn up additional evidence of wrongdoing was an "inchoate hunch" because L.M. had already handed over the vaping device he was caught using. (Doc. 77 at 21.) But as noted above, Defendant has presented undisputed evidence that, in school officials' experience, when a student is found to have one vape product, "the majority of the time" he also possesses other such products. (Doc. 65-1 at 8.)

In sum, Plaintiffs have presented cognizable evidence that Defendant Archuleta, while searching D.M., J.M., and L.M. as a campus security aide at Cleveland, touched these adolescents' genitals deliberately for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect they possessed a weapon or had concealed evidence of wrongdoing in their groin areas. Based on this evidence, a reasonable factfinder could conclude that Defendant's contacts with the student Plaintiffs' genitals were not reasonably related to the objectives of the searches he was conducting, were excessively intrusive, and violated the student Plaintiffs' clearly established rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For these reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of D.M., J.M., and L.M. In addition, in light of the genuine issues of material fact Plaintiffs have shown, Defendant is not entitled to summary judgment on these claims.

## II.     Plaintiffs have not asserted Fourteenth Amendment substantive due process claims against Defendant Archuleta.

In addition to challenging Plaintiffs' Fourth Amendment claims, Defendant in his Motion argues that he is entitled to qualified immunity from any Fourteenth Amendment substantive due process claims Plaintiffs may have asserted. (Doc. 66 at 23-24.) In their response, Plaintiffs counter that Defendant is not entitled to qualified immunity from such claims because his alleged actions shock the conscience and violated the student Plaintiffs' clearly established Fourteenth Amendment substantive due process rights to bodily integrity. (Doc. 77 at 29-35.)

In his reply, however, Defendant Archuleta points out that Plaintiffs' complaints do not in fact assert any substantive due process claims. (Doc. 85 at 29-30.) Specifically, he observes that

> Plaintiffs' complaints are devoid of any allegations or language specifically identifying the Substantive Due Process Clause of the Fourteenth Amendment;

> there are no allegations regarding "substantive due process rights," or "the right to bodily integrity," or conduct that is "shocking to the conscience."

(*Id.* at 29.) Defendant further notes that "Plaintiffs have not moved to amend their complaints to add a substantive due process claim." (*Id.*) Defendant therefore argues that Plaintiffs should not be allowed to pursue substantive due process claims asserted for the first time in their summary judgment response. (*Id.* at 29-30.)

Each Plaintiff's complaint refers to the Fourteenth Amendment twice. (Doc. 1-3 at 9, 11; Civ. No. 21-648, Doc. 1-3 at 4-5; Doc. 21-751, Doc. 1-3 at 5-6.) The first reference is found in Count I, which is captioned, "Violation of 42 U.S.C. [§] 1983, Illegal Search and Seizure under the Fourth Amendment Against Defendant Archuleta in his Individual Capacity," in a sentence which states in its entirety, "[t]he 4th and 14th Amendments of the United States Constitution vested Plaintiff with a clearly established right to be free from unreasonable warrantless search and seizure." (Doc. 1-3 at 9; Civ. No. 21-648, Doc. 1-3 at 3-4; Civ. No. 21-751, Doc. 1-3 at 4-5.) The second reference is found in Count II, which is captioned, "Violations of N.M. Tort Claims Act NMSA 1978 § 41-4-12 Against George Archuleta and Rio Rancho Public Schools Board of Education," in a sentence which states in its entirety, "Defendant Archuleta also seized [the student Plaintiff] in violation of his rights under Article 2 Section 10 of the New Mexican Constitution[22] and in violation of the 4th and 14th Amendments of the United States Constitution."[23] (Doc. 1-3 at 10-11; Civ. No. 21-648, Doc. 1-3 at 4-5; Civ. No. 21-751, Doc. 1-3 at 5-6.) Nowhere do any of the complaints refer to "due process" or "bodily integrity." (*See generally id.*) In these

---

[22] Article II, Section 10 of the New Mexico Constitution pertains to searches and seizures. N.M. Const. Art. II, § 10. The portion of the New Mexico Constitution that pertains to due process is found in Article II, Section 18. N.M. Const. Art. II, § 18. Plaintiffs do not refer to Article II, Section 18 in their complaints.

[23] It seems likely that Plaintiffs made these references to Fourteenth Amendment in their complaints because "the Fourth Amendment applies to [public school officials] through the Fourteenth Amendment." *T.L.O.*, 469 U.S. at 334.

circumstances, the Court concludes that Plaintiffs have failed to assert any Fourteenth Amendment substantive due process claims against Defendant Archuleta and declines to issue an advisory opinion addressing the viability of, or Defendant's entitlement to qualified immunity from, claims Plaintiffs have neither pleaded nor sought leave to add.

## CONCLUSION

For all of the above reasons, the Court FINDS that Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity on Count I (Doc. 66) is not well-taken and it is hereby DENIED.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

30

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRCT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                                  **Case No. 1:21-cv-00427 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULEETA, in his individual and official capacity,**

      **Defendants.**

**and**

**SARAH MONTOYA, o.b.o L.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                                  **Case No. 1:21-cv-00648 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULEETA, in his individual capacity,**

      **Defendants.**

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                                  **Case No. 1:21-cv-00751 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and**
**GEORGE ARCHULEETA, in his individual capacity, and**
**JOHN DOE # 1, in his individual capacity,**

      **Defendants.**

1

## NOTICE OF APPEAL

COMES NOW Defendant George Archuleta, by and through counsel, Quiñones Law Firm LLC (Carlos M. Quiñones), and hereby files this Notice of Appeal as to the following:

1. Memorandum Opinion and Order filed on March 31, 2025 [Doc. 90], denying Defendant George Archuleta's Motion for Summary Judgment on Basis of Qualified Immunity on Count I, attached hereto as Exhibit A.

The Court's Memorandum Opinion and Order denying Defendant George Archuleta's Motion for Summary Judgment on Basis of Qualified Immunity on Count I is considered a "final judgment" at the trial court level as construed by federal law in *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). Therefore, this matter is now ripe for appeal.

Respectfully submitted,

**QUIÑONES LAW FIRM LLC**

By: Electronic Signature */s/ Carlos M. Quiñones*
      CARLOS M. QUIÑONES, ESQ.
      1223 S. Saint Francis Dr., Ste. C
      Santa Fe, NM  87505
      (505) 992-1515  (505) 992-1714 (fax)
      *Attorney for Defendant George Archuleta*

It is hereby certified that undersigned counsel filed the foregoing electronically
through the CM/ECF system on April 30, 2025, which caused
the following counsel to be served by electronic means:

Jason Bowles, Esq.
Bowles Law Firm
4811 Hardware Dr. NE, Ste. D-5
Albuquerque, NM 87109
(505) 217-2680

2

and

Todd J. Bullion, Esq.
300 Central Ave. NW, Ste. 1000-E
Albuquerque, NM 87102
(505) 452-7674
*Attorneys for Plaintiffs*

Jerry A. Walz, Esq.
Alisha L. Walz, Esq.
Walz & Associates, P.C.
133 Eubank Blvd. NE
Albuquerque, NM 87123-2709
(505) 275-1800
*Attorneys for Defendant Rio Rancho Public
Schools Board Education*

 Electronic Signature */s/ Carlos M. Quiñones*
CARLOS M. QUIÑONES

3



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARK MONDRAGON,

     Plaintiff,

vs.                                                        Civ. No. 21-427 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

     Defendants,

*and*

SARAH MONTOYA,

     Plaintiff,

vs.                                                        Civ. No. 21-648 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

     Defendants,

*and*

ANGELA SALAZAR,

     Plaintiff,

vs.                                                        Civ. No. 21-751 KK/JMR

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

     Defendants.

## **MEMORANDUM OPINION AND ORDER**

     Before the Court is Defendant George Archuleta's Motion for Summary Judgment on the

EXHIBIT A

Basis of Qualified Immunity on Count I (Doc. 66)[1] ("Motion"), filed on September 11, 2023. Plaintiffs filed a response in opposition to the Motion on January 26, 2024, and Defendant Archuleta filed a reply in support on May 22, 2024. (Docs. 77, 85.) The Court, having considered the parties' submissions, the record, and the relevant law, FINDS that the Motion is not well-taken and should be DENIED.

## INTRODUCTION

In each of these three consolidated cases, Plaintiff is the parent of a student who attended V. Sue Cleveland High School ("Cleveland") in Rio Rancho, New Mexico. (Doc. 1-3 at 7; Civ. No. 21-648, Doc. 1-3 at 1-2; Civ. No. 21-751, Doc. 1-3 at 2.) Plaintiffs allege that Defendant George Archuleta unlawfully touched the student Plaintiffs' genitals while searching them for contraband.[2] (*Id.*) At the time of the alleged unlawful searches, Defendant Rio Rancho Public Schools Board of Education ("RRPS") employed Defendant Archuleta as a campus security aide at Cleveland. (*Id.*; Docs. 65-3, 65-4, 65-5.)

In 2021, each Plaintiff filed a lawsuit in state court, asserting claims against Defendants under 42 U.S.C. § 1983 (Count I) and the New Mexico Tort Claims Act (Counts II, III, and IV). (Doc. 1-3 at 6-13; Civ. No. 21-648, Doc. 1-3; Civ. No. 21-751, Doc. 1-3.) Defendants removed the cases to this Court, where they were consolidated on the parties' joint request. (Docs. 1, 48, 49; Civ. 21-648, Doc. 1; Civ. No. 21-751, Doc. 1.)

---

[1] Except as otherwise noted, all citations to the record are to documents filed in the lead case, *Mondragon v. Rio Rancho Public Schools, et al.*, Civ. No. 21-427 KK/JMR.

[2] All three of the student Plaintiffs appear to have been minors at the time of the incidents forming the basis of Plaintiffs' complaints, not only because they were high school students, but also because they did not bring suit independently and have appeared in these actions only by their initials. *See* Fed. R. Civ. P. 5.2(a)(3) (electronic or paper filing that identifies minor "may include only … the minor's initials"). However, the record reflects that at least two of the student Plaintiffs, D.M. and J.M., are now adults. (Doc. 65-10 at 2; Doc. 65-11 at 2, 12.) The Court therefore refers to these parties as the "student Plaintiffs" rather than the "minor Plaintiffs."

2

In the present Motion, Defendant Archuleta seeks summary judgment on Count I of Plaintiffs' complaints. (Doc. 66.) In Count I, Plaintiffs bring claims for "Violation of 42 U.S.C. [§] 1983, Illegal Search and Seizure under the Fourth Amendment Against Defendant Archuleta in his Individual Capacity" based on Defendant's allegedly inappropriate searches of the student Plaintiffs. (Doc. 1-3 at 9-10; Civ. 21-648, Doc. 1-3 at 3-4; Civ. 21-751, Doc. 1-3 at 4-5.) Defendant argues that he is entitled to qualified immunity from these claims because Plaintiffs cannot show that he violated the student Plaintiffs' clearly established constitutional rights. (Doc. 66.)

## LEGAL STANDARDS

In relevant part, 42 U.S.C. § 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects … any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

A public official sued under Section 1983 may raise the affirmative defense of qualified immunity. *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1307 (10th Cir. 2015). When a defendant raises this defense in a motion for summary judgment, the burden shifts to the plaintiff to show that (1) the defendant's actions violated the plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear

3

the traditional burden of the movant for summary judgment." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018).

Courts may address the two prongs of the qualified-immunity test in any order. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016). In determining whether the plaintiff has satisfied this test, courts "ordinarily accept the plaintiff's version of the facts," provided it "find[s] support in the record." *Halley*, 902 F.3d at 1144; *A.M.*, 830 F.3d at 1136. Facts that the record supports must be construed "in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

A constitutional right is clearly established under the second prong of the qualified-immunity test if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). In general, for a right to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other Circuits must show that the right is as the plaintiff maintains. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation marks omitted). "[P]recedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotation marks and emphases omitted).

Nevertheless, the qualified immunity "analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct [at issue] for the official[] to have been on notice of clearly established law." *Luethje v. Kyle*, — F.4th —, 2025 WL 851085, at *4 (10th Cir. Mar. 19, 2025). "A case directly on point is not necessary if existing precedent has placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)) (brackets and quotation marks omitted). In other words, "[g]eneral

statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley*, 902 F.3d at 1149 (quotation marks omitted).

Further, "[t]here can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Doe*, 912 F.3d at 1289. "After all, some things are so obviously unlawful that they don't require detailed explanation, and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Rosales v. Bradshaw*, 72 F.4th 1145, 1156 (10th Cir. 2023) (brackets omitted). "[T]he most obviously unconstitutional conduct" should not be "the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Id.* at 1156-57. "Thus, qualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional." *Id.* at 1157.

As noted above, if the plaintiff satisfies both prongs of the qualified-immunity test, then the defendant must take up the usual burden of a summary judgment movant. *Halley*, 902 F.3d at 1144. Generally, a party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). When the nonmovant would bear the burden of proof at trial, the movant may meet its initial summary judgment burden by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the movant meets its initial summary judgment burden, "the burden then shifts

to the nonmovant," *id.*, who must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant … by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (quotation marks omitted).

A factual "dispute is genuine when the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation marks and brackets omitted). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to the nonmovant. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, the Court will not draw "unreasonable inferences that are unsupported by the record." *Est. of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017).

## ANALYSIS

**I.      Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' claims that he violated the student Plaintiffs' clearly established Fourth Amendment rights.**

In pertinent part, the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment's prohibition against unreasonable searches and seizures applies to public school officials' searches of students. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). However, school officials need neither a warrant nor probable cause to search a student under their authority. *Id.* at

340-41. Rather, "the legality of a search of a student … depend[s] simply on the reasonableness, under all the circumstances, of the search."[3] *Id.* at 341.

For any search to be reasonable, it must be (1) "justified at its inception," and (2) conducted in a way that is "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* Ordinarily, a school official's search of a student is justified at its inception when the official has "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."[4] *Id.* at 341-42. To satisfy this standard, the official needs more than an "inchoate and unparticularized suspicion or 'hunch,'" but less than an "absolute certainty." *Id.* at 346. In other words, the official must have "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009). A school official's search of a student is permissible in scope, in turn, when it is conducted in a way that is "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342.

However, a school official's search of a student that "expose[s]" the student's "pelvic area to some degree" is "categorically distinct, requiring distinct elements of justification." *Safford*, 557 U.S. at 374; *see also A.M.*, 830 F.3d at 1161 ("[A] higher level of justification is necessary to proceed with a search that will expose a student's intimate areas."). In *Safford*, public school

---

[3] In light of this "special needs" exception to the Fourth Amendment's usual warrant and probable-cause requirements, the Court exercises considerable caution in citing to precedents involving non-school searches in this Memorandum Opinion and Order. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995).

[4] The Supreme Court has found that individualized suspicion is not always necessary for a school search to be reasonable, upholding a school district policy requiring student athletes to submit to routine drug testing in light of these students' "decreased expectation of privacy, the relative unobtrusiveness of the search, and the severity of the need met by the search." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664–65 (1995). However, Defendant Archuleta has not shown that the factors listed in *Vernonia* justified the searches Plaintiffs challenge in these cases. (*See generally* Docs. 65, 66, 84, 85.) The Court therefore concludes that individualized suspicion was required for the at-issue searches to have been justified at their inception.

DNM 50

officials required a middle school student to undress down to her bra and underpants, pull her bra out and to the side and shake it, and pull out the elastic on her underpants. 557 U.S. at 368-69. This search was justified at its inception because it was based on individualized suspicion that the student was giving other students prescription ibuprofen and over-the-counter naproxen in violation of school policy. *Id.* at 373-74.

Nevertheless, the *Safford* Court found that the search violated the Fourth Amendment due to its scope. *Id.* at 376-77. The Court held that for a school official to be permitted to "make the quantum leap from outer clothes and backpacks to exposure of intimate parts," the official must have "reasonable suspicion of danger or of resort to underwear for hiding evidence of wrongdoing." *Id.* at 377. And in *Safford*, such suspicion was lacking. *Id.* at 375-77. In other words, "the content of the [school officials'] suspicion failed to match the degree of intrusion" of the search they conducted.[5] *Id.* at 375.

In so holding, the *Safford* Court noted the student plaintiff's "subjective expectation of privacy against" the kind of search she experienced, which was "inherent in her account of it as embarrassing, frightening, and humiliating." *Id.* at 374-75. The Court also acknowledged the objective reasonableness of the student's privacy expectation, noting that "adolescent vulnerability intensifie[d] the patent intrusiveness of the exposure." *Id.* at 375. The Court explained that "[t]he indignity of the search does not, of course, outlaw it, but it does implicate the rule of reasonableness as stated in *T.L.O.*, that 'the search as actually conducted be reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *T.L.O.*, 469 U.S. at 341) (brackets omitted).

---

[5] However, the *Safford* Court also held that the defendant school officials in that case were entitled to qualified immunity because some federal appellate courts had found analogous searches to be constitutional, and these appellate decisions were "numerous enough, with well-reasoned majority and dissenting opinions, to counsel doubt that [the Supreme Court was] sufficiently clear in [its] prior statement of law." *Safford*, 557 U.S. at 378-79.

8

*Safford* establishes that a school official must have reasonable grounds to suspect that a student possesses a dangerous item or has concealed evidence of wrongdoing in the groin area to be permitted to deliberately search the student's genitals. 557 U.S. at 377. It inexorably follows that such grounds must justify not only searches that expose the student's genitals to the official's sight, but also searches that expose the student's genitals, clothed or not, to the official's deliberate touch. *Id.* at 374, 377. Any reasonable official would understand that both of these types of exposure are unusually intrusive. The Court therefore finds that deliberately touching a student's genitals during a search without the grounds *Safford* identified is so obviously unlawful under the well-established constitutional principles stated in *Safford* and *T.L.O.* that any reasonable school official would know it violates the Fourth Amendment, even in the absence of Supreme Court or Tenth Circuit precedent directly on point.[6] *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42; *see Rosales*, 72 F.4th at 1156-57.[7]

While there is record evidence that Defendant Archuleta conducted numerous searches of the student Plaintiffs, the parties' briefing on the Motion specifically disputes whether seven of these searches—three of D.M., two of J.M., and two of L.M.—violated the Fourth Amendment. (*See generally* Docs. 65, 66, 76, 77, 84, 85.) Defendant Archuleta contends that the seven at-issue

---

[6] The Court's finding on this point applies only in the context presented in these cases as well as *Safford*, and *T.L.O.*, in which the purported purpose of the at-issue search is to enforce an adolescent student's compliance with laws and school rules. The Court does not address how *Safford* and *T.L.O.* might apply to searches of students that occur in other contexts.

[7] In addition to discussing *Safford* and *T.L.O.*, both sides cite to various federal district court decisions in debating the reasonableness of the searches Plaintiffs challenge. (*See, e.g.*, Doc. 66 at 15-16; Doc. 77 at 12-13; Doc. 85 at 10.) However, none of the cited district court cases are binding precedent, and none of them present facts sufficiently similar to the present matter to be helpful to the Court's analysis. Moreover, two of the cases predate the Supreme Court's 2009 decision in *Safford*, which provides the rule of law on which this Court's analysis turns. (*See* Doc. 66 at 15 (citing *H.Y. ex rel. K.Y. v. Russell Cnty. Bd. of Educ.*, 490 F. Supp. 2d 1174 (M.D. Ala. 2007)); Doc. 85 at 10 (citing *In re Josue T.*, 1999-NMCA-115, 989 P.2d 431).)

DNM 52

searches were proper because they were "justified by reasonable, individualized suspicion" that the student Plaintiffs possessed contraband or a weapon and that they were "reasonable in scope." (Doc. 66 at 12, 16, 20.) Plaintiffs, conversely, argue that the searches violated the student Plaintiffs' clearly established Fourth Amendment rights because they were not justified at their inception and their scope exceeded any purported justification. (Doc. 77 at 17-29.)

In taking these diametrically opposed positions, the parties present vastly different versions of events, among other things disputing whether Defendant Archuleta ever touched the student Plaintiffs' genitals and even whether some of the alleged searches happened at all. (*Compare generally* Docs. 65, 66, 84, *and* 85 *with* Docs. 76 *and* 77.) While a jury may ultimately resolve the parties' factual disputes in Defendant Archuleta's favor, in analyzing Defendant's qualified-immunity defense, the Court must accept Plaintiffs' version of events as true, provided there is record support for it, and must construe supported and undisputed facts in Plaintiffs' favor.[8] *A.M.*, 830 F.3d at 1136; *Thomson*, 584 F.3d at 1312. And of course, if Defendant's qualified-immunity defense fails, the existence of a genuine issue of material fact will preclude summary judgment. Fed. R. Civ. P. 56(a). The Court analyzes the constitutionality of the seven allegedly improper searches at issue in light of the foregoing legal principles.

## A.  Defendant Archuleta's Allegedly Inappropriate Searches of D.M.

Defendant Archuleta's Motion addresses three searches during which D.M. claims that Defendant touched him inappropriately. The first two searches took place during D.M.'s freshman year, on or about February 21, 2019. (Doc. 65-1 at 14; Doc. 65-10 at 10; Doc. 76-8 at 4-6.) D.M.

---

[8] Defendant objects to the form of many of the facts in Plaintiffs' Joint Statement of Undisputed Facts. (Doc. 84 at 2-38; Doc. 85 at 2-3.) The Court finds that, although the form of Plaintiffs' facts is not perfect, it is not so flawed that the facts themselves should be disregarded, provided there is record support for them. *See generally Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1459 (10th Cir. 1996) ("Mere technicalities should not obstruct the consideration of a case on its merits.") (brackets and quotation marks omitted).

admits that, on that date, he and J.M. were fist-fighting in a school restroom. (Doc. 76-8 at 5.) Defendant Archuleta arrived, saw that D.M. had a black eye, and took him to the sophomore office. (*Id.* at 5-6.) Defendant did not suspect that D.M. had a weapon on his person.[9] (Doc. 76-4 at 14.)

D.M. gave the following account of the searches that followed. Defendant Archuleta first searched D.M. in the sophomore office with no one else present. (Doc. 76-8 at 4-6.) After D.M. emptied his pockets, Defendant felt around D.M.'s thighs and buttocks. (Doc. 65-10 at 10; Doc. 76-8 at 5, 12.) Then, with his hands in D.M.'s pockets, Defendant touched the tip of D.M.'s penis, made a "swirly motion" around it, and asked, "What's this?" (Doc. 76-8 at 5, 7.) He also touched D.M.'s buttocks through his clothing. (*Id.* at 12.) After this search, Defendant took D.M. to the nurse's office, where a school police officer ran a metal detector wand over D.M. (Doc. 65-10 at 10.) Defendant then searched D.M. a second time, again putting his hands in D.M.'s pockets and touching his penis. (*Id.*) No weapons or contraband were found on D.M.'s person. (*Id.*) Defendant Archuleta did not make skin-to-skin contact with D.M.'s genitals during either search. (*Id.* at 7-8, 10.) Nevertheless, the searches were "very traumatic" for D.M. and made him feel "[d]epressed," "[d]istressed," and "[e]mbarrassed." (*Id.* at 17.)

Defendant Archuleta argues that his February 21, 2019 searches of D.M. were justified at their inception because he had "reasonable, individualized suspicion that D.M. possessed contraband and/or a weapon." (Doc. 66 at 12, 14.) In support, he points to undisputed evidence

---

[9] As further discussed below, Defendant Archuleta testified that he never suspected any of the student Plaintiffs of possessing a weapon on campus. (Doc. 76-4 at 14.) Similarly, RRPS Security Manager Don Mangin testified that he did not recall ever being made aware that any of the student Plaintiffs were suspected of possessing a weapon on school grounds. (Doc. 76-1 at 11.) Also, Cleveland Principal Scott Affentranger testified that D.M. was never suspected of having a weapon on school grounds in any specific incident in which Mr. Affentranger was involved, and that he would have been advised if he was on campus and a student was suspected of having a weapon. (Doc. 76-5 at 5.) And, Assistant Principal Millan Baca testified that he did not suspect D.M. of possessing a weapon based on D.M.'s having been threatened by other students or D.M.'s inclusion in a group chat in which others discussed firearms and potential violence. (Doc. 76-3 at 6-7; *see also* Doc. 84-3 at 2.)

that D.M. was caught fighting with another student, *i.e.*, a "serious incident that was a violation of [Cleveland's] code of conduct," and that a shooting had occurred at the school a week earlier.[10] (*Id.*; *see* Doc. 65-1 at 17; Doc. 65-8 at 4; Doc. 65-13.) Defendant also submits evidence that, by September 2018, school administrators knew of a group chat in which D.M. was included but did not actively participate, in which others discussed "a handgun and the potential for physical violence." (Doc. 85 at 4; *see* Doc. 84-1 at 5; Doc. 84-2 at 3-5; Doc. 84-3 at 2; Doc. 84-4.) Also, a student in that chat told administrators "he had heard that a lot of boys were carrying guns at the time." (Doc. 84-3 at 2.) According to Defendant, "[u]nder these circumstances, … it was reasonable to believe that [D.M.] could have a weapon on his person that could be used on another student or on the campus security aide" on February 21, 2019. (Doc. 66 at 14.) Plaintiffs, in contrast, argue that the cited circumstances do not rise to the level of reasonable suspicion for the particular search at issue. (Doc. 77 at 17-18.)

Even accepting Plaintiffs' supported facts as true and construing in D.M.'s favor these and the facts the parties do not dispute, the record includes some level of objective justification for Defendant Archuleta's February 21, 2019 searches of D.M. In particular, Defendant undisputedly had reason to believe D.M. had just violated the law and school rules and engaged in physical violence by fighting with J.M. Thus, at least arguably, a limited search was justified to preserve evidence and ensure Defendant Archuleta's and others' safety while Defendant escorted D.M. to an administrator to be disciplined. Such a search would be analogous—though by no means identical—to a police officer's search incident to an arrest in terms of its justification. *Cf., e.g., Virginia v. Moore*, 553 U.S. 164, 176-77 (2008) ("[O]fficers may perform searches incident to constitutionally permissible arrests … to safeguard evidence, and … to ensure their safety during

---

[10] There is no record evidence that D.M. was involved in the shooting or that any school official suspected he was.

the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.") (quotation marks omitted); *see generally Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) ("[S]tudents within the school environment have a lesser expectation of privacy than members of the population generally.").

In arguing that Defendant's evidence of justification is nevertheless insufficient, Plaintiffs place particular weight on Defendant's testimony that he never suspected any of the student Plaintiffs of possessing a weapon on school grounds. (Doc. 77 at 18; *see* Doc. 76-4 at 14.) Of course, this evidence does not rule out the existence of reasonable grounds to suspect D.M. had a weapon on February 21, 2019, because a Fourth Amendment "reasonableness inquiry" is usually "objective," *i.e.*, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). Still, construed in Plaintiffs' favor, Defendant's testimony does logically support the inference that the facts and circumstances known to him did not constitute reasonable grounds to suspect D.M. had a weapon.

However, even if Plaintiffs were correct that Defendant's February 21, 2019 searches of D.M. did in fact lack adequate justification at the outset, they have failed to identify any Supreme Court or Tenth Circuit precedent that (1) supports their position and (2) either is directly on point or includes a general statement of the law that applies with obvious clarity.[11] (*See generally* Doc. 77.) Thus, they have not shown that these searches violated D.M.'s clearly established Fourth Amendment rights on the basis that they were unjustified at their inception. *See N.E.L. v. Douglas*

---

[11] Plaintiffs' citations to *Terry v. Ohio*, 392 U.S. 1 (1968), *Sibron v. New York*, 392 U.S. 40 (1968), and *United States v. King*, 990 F.2d 1552 (10th Cir. 1993), are inapposite because none of these cases involved the special-needs exception to the Fourth Amendment's warrant and probable-cause requirements applicable to a school official's search of a student. (*See* Doc. 77 at 11-12.) And Plaintiffs' frequent citations to *A.M.*, (*see, e.g., id.* at 14-16, 23-24), do not help them because in that case the Tenth Circuit held that the defendant school official's search of the student plaintiff was justified at its inception, and also reasonable in scope. *A.M.*, 830 F.3d at 1159, 1162.

13

*Cnty., Colo.*, 740 F. App'x 920, 929 (10th Cir. 2018) (on motion for qualified immunity, "it's the plaintiff's burden to identify the relevant clearly established law").

This leaves the question of whether the searches violated D.M.'s clearly established rights because they were objectively unreasonable in scope. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. Accepting D.M.'s testimony as true and construing this testimony and the undisputed facts in Plaintiffs' favor, the Court finds that the scope of these searches was unreasonable under clearly established law. Defendant Archuleta argues that the searches were reasonable in scope because any contact with D.M.'s genitals was "incidental or accidental" and "*de minimis*." (Doc. 66 at 16.) Yet, at his deposition, he did not testify that he touched D.M.'s—or indeed any of the student Plaintiffs'—genitals incidentally, accidentally, or minimally. Rather, he testified that: (1) he was trained to never pat down a student in the area between the waist and three inches above the knee; (2) he only searched D.M. once after D.M.'s fight with J.M., at Assistant Principal Millan Baca's direction, and he only searched D.M.'s "arms, his back down the middle, around his belt line, [and] his legs ... [t]hat was the extent of the search"; (3) he never searched D.M. without a witness present; and, (4) he never touched any student Plaintiff's genitals. (Doc. 65-6 at 3, 5-6, 9; Doc. 76-4 at 20.) In other words, he did not testify that the way he touched D.M.'s penis was reasonable; rather, he denied that he ever touched D.M.'s penis at all.

In addition, there is record evidence that, viewed in Plaintiffs' favor, would allow a reasonable factfinder to conclude that Defendant touched D.M.'s penis deliberately and for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect D.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area.[12] This

---

[12] Defendant does not identify any dangerous item other than a weapon that he claims he had reasonable grounds to suspect any of the student Plaintiffs possessed. (*See generally* Docs. 66, 85.) He does argue that he had reasonable grounds to suspect they possessed "contraband," (*id.*), but the contraband at issue appears to have been limited to

includes evidence that: (1) Defendant never suspected D.M. of possessing a weapon; (2) Defendant conducted the first search with no one else present in violation of school policy,[13] (Doc. 65-7 at 3; Doc. 76-1 at 6, 9; Doc. 76-4 at 15; Doc. 76-5 at 11); (3) Defendant touched D.M.'s penis twice on February 21, 2019, and a third time on March 5, 2020, as discussed below; (4) Defendant touched J.M.'s genitals on two occasions, as discussed in Section I.B., *infra*; (5) Defendant touched L.M.'s genitals on two occasions, as discussed in Section I.C., *infra*; (6) on a daily basis, Defendant stared at D.M., J.M., and L.M. in school hallways, told them to pull up their pants even though their pants were already pulled up, and threatened to search them, (Doc. 76-8 at 13); and, (7) Defendant called D.M. "hito" in a "weird" way many times, even though the two are not related,[14] (*id.* at 6, 16; Doc. 76-10 at 5). Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contacts with D.M.'s penis were not reasonably related to the objectives of the February 21, 2019 searches, were excessively intrusive, and violated D.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

Defendant Archuleta's third allegedly inappropriate at-issue search of D.M. took place the following school year, on March 5, 2020. It is undisputed that, the previous day at a school bus boarding area, Defendant saw D.M. put an item in his pocket and asked D.M. what it was. (Doc.

tobacco or nicotine vape products, and Defendant has failed to present evidence that such products, as a category, are sufficiently dangerous to justify a *Safford*-level search.

[13] Defendant is correct that evidence of a policy violation, without more, does not establish a constitutional violation or defeat qualified immunity. (Doc. 85 at 6 (citing *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984); *Jensen v. Garden*, 752 F. App'x 620, 626 (10th Cir. 2018)).) Here, however, Defendant's alleged violation of the school's policy requiring a witness to be present for searches of students supports the inference that Defendant knowingly and intentionally engaged in wrongful conduct that he did not want others to see.

[14] The Court takes judicial notice that "mi hijito" literally means "my little son" in Spanish. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); (*see also* Doc. 65-6 at 7 (according to Defendant Archuleta, "jito" means "[i]t's like son or a family member"); Doc. 65-10 at 14 (according to D.M., "hito" means "like you're an uncle and like you have your nephew and you call him hito").)

15

65-6 at 6; Doc. 65-10 at 6; Doc. 65-14 at 1-2.) Then, either D.M. showed him, or he searched D.M. and found, a nicotine vape product, which school policy prohibited students from having. (*Id.*; Doc. 65-8 at 4; Doc. 76-1 at 3, 9; Doc. 76-8 at 6.) Defendant Archuleta confiscated the vape product from D.M. and told him to report to Mr. Baca's office the next morning. (Doc. 65-6 at 6; Doc. 65-14 at 2.)

On the morning of March 5, 2020, D.M. reported to Mr. Baca's office as instructed. (Doc. 65-10 at 7; Doc. 65-14 at 2.) While Mr. Baca was interviewing D.M., D.M. repeatedly put his hands in his pockets, "digging around" in them and "trying to push something down." (Doc. 65-1 at 9-11.) Mr. Baca asked him to remove his hands from his pockets "numerous times," but D.M. refused to do so.[15] (*Id.*) Mr. Baca asked D.M. what was in his pockets, but D.M. did not answer. (*Id.*) Based on D.M.'s behavior, Mr. Baca suspected D.M. had a weapon or contraband in his pockets and directed Defendant Archuleta to search him.[16] (*Id.*; Doc. 65-6 at 6; Doc. 65-14 at 2.)

D.M. gave the following account of the search that followed. As Defendant Archuleta was beginning the search, D.M. said to Defendant, "[d]on't touch my dick." (Doc. 76-8 at 8.) Defendant Archuleta pulled a condom out of D.M.'s wallet, showed the condom to D.M., and stated "oh you're a little guy," referring to the size of D.M.'s penis. (Doc. 65-12 at 2; *see also* Doc. 76-8 at 7.) With his hands in D.M.'s pockets, Defendant Archuleta touched the tip of D.M.'s penis. (Doc. 65-10 at 10; Doc. 76-8 at 8, 11-12.) He also touched D.M.'s buttocks through his clothing. (Doc.

---

[15] Although Plaintiffs challenge the legal sufficiency of the reasons Mr. Baca gave for directing Defendant to search D.M., they do not dispute that D.M. repeatedly put his hands in his pockets, refused requests to remove them, and failed to answer when asked what was in them. (*See* Doc. 76 at 9 ¶ 19.)

[16] Again, although Plaintiffs challenge the reasonableness of Mr. Baca's suspicion, they have not identified any evidence that would create a genuine dispute regarding Mr. Baca's subjective motivation for directing Defendant Archuleta to search D.M. on March 5, 2020. (*See* Doc. 76 at 9.) Plaintiffs do argue that Mr. Baca testified he never suspected D.M. of having a weapon, but the evidence they cite does not fully support their argument. (*Id.*) Although Mr. Baca did testify that he did not suspect D.M. of having a weapon because D.M. had been threatened by other students, or because of D.M.'s inclusion in a group chat in which others discussed firearms and potential violence, (Doc. 76-3 at 6-7), this is of course different from testifying that he never suspected D.M. of having a weapon at all.

76-8 at 12.) Defendant did not find any weapons or contraband during this search. (Doc. 65-14 at 2.) Defendant did not make skin-to-skin contact with D.M.'s genitals. (Doc. 65-10 at 7-8, 10.)

Defendant Archuleta argues that his March 5, 2020 search of D.M. was justified at its inception because, based on D.M.'s behavior, Mr. Baca reasonably suspected that D.M. had a weapon or contraband in his pockets and was therefore justified in directing Defendant to search him. (Doc. 66 at 15.) Plaintiffs do not directly address this argument, instead asserting that D.M.'s possession of a vape product on school grounds on March 4, 2020, "cannot serve as the basis to search D.M. again the following day." (Doc. 77 at 18.)

Even accepting Plaintiffs' supported facts as true and viewing these and the undisputed facts in D.M.'s favor, Plaintiffs have failed to show that Defendant Archuleta's March 5, 2020 search of D.M. was unjustified at its inception under clearly established law. It is undisputed that Defendant Archuleta searched D.M. at Mr. Baca's direction; and, at least arguably, Mr. Baca had reasonable grounds to suspect that D.M. was concealing evidence of wrongdoing in his pockets. Indeed, not only did Mr. Baca observe D.M. digging around in his pockets and refusing to take his hands out of them or tell Mr. Baca what was in them, but also Mr. Baca knew D.M. had possessed vape products at school the day before, and on another occasion the previous school year. (Doc. 65-1 at 8.) Yet, Plaintiffs have failed to identify any Supreme Court or Tenth Circuit precedent that (1) supports their position that the search was nevertheless unjustified, and (2) either is directly on point or includes a general statement of the law that applies with obvious clarity. (*See generally* Doc. 77.) Thus, they have not met their burden to show that this search violated D.M.'s clearly established Fourth Amendment rights because it was unjustified at its inception. *T.L.O.*, 469 U.S. at 341-42; *N.E.L.*, 740 F. App'x at 929.

17

But again, a search that is justified at its inception may nevertheless violate the Fourth Amendment if it is carried out in an unreasonable way. *T.L.O.*, 469 U.S. at 341-42; *A.M*, 830 F.3d at 1160. And again, despite Defendant's argument that his contacts with D.M.'s penis were incidental, accidental, or *de minimis*, (Doc. 66 at 16), there is evidence that, viewed in the light most favorable to Plaintiffs, would tend to show that the scope of Defendant's March 5, 2020 search of D.M. was unreasonable because he deliberately touched D.M.'s penis for his own personal gratification, and not because he had reasonable grounds to suspect that D.M. possessed a weapon or was concealing evidence of wrongdoing in the vicinity of his genitals.[17] This evidence includes not only the evidence just discussed in relation to Defendant's February 21, 2019 searches of D.M., but also evidence that, on March 5, 2020, Defendant touched D.M.'s penis after (1) D.M. specifically told him not to, and (2) Defendant made a derogatory comment about D.M.'s penis size. Based on this evidence, a reasonable factfinder could conclude that Defendant's March 5, 2020 contact with D.M.'s penis was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated D.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For all of these reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of D.M.

**B.**     **Defendant Archuleta's Allegedly Inappropriate Searches of J.M.**

J.M. claims that Defendant Archuleta touched him inappropriately during two searches that occurred his sophomore year. (Doc. 76-10 at 5.) It is undisputed that, on October 3, 2019, J.M. and some of his friends "were supposed to fight another kid" but did not, because school "security

---

[17] In this regard, the Court notes that Defendant has not presented any evidence tending to show that he touched D.M.'s penis accidentally in the process of searching D.M.'s pockets. On the contrary, he denied that he ever touched any student Plaintiff's genitals at all, even accidentally. (Doc. 76-4 at 15, 20.)

intervened before it happened." (Doc. 65-17 at 2; *see* Doc. 65 at 15-16 ¶ 86; Doc. 76 at 10 ¶ 21.) Security camera footage showed J.M. at the scene of the anticipated fight. (*Id.*) The next day, J.M. was called to Principal Scott Affentranger's office in connection with this incident. (*Id.*) After Mr. Affentranger interviewed J.M., Mr. Baca asked Defendant Archuleta to search J.M. and his backpack. (Doc. 65-1 at 15; Doc. 65-6 at 8; Doc. 65-17 at 2.) Defendant's report regarding the search indicates that he found an electronic cigarette and a bottle of "E-Cig juice" in J.M.'s backpack. (Doc. 65-17 at 2.)

Defendant takes the position that his October 4, 2019 search of J.M. is the search during which J.M. claims Defendant touched him inappropriately the first time. (Doc. 66 at 20-21; Doc. 85 at 24.) However, J.M. testified that he was searched more than 50 times that school year, (Doc. 65-11 at 4), and, on the present record, his description of the October 4, 2019 search appears to be quite different from his description of the first search during which he claims Defendant touched him inappropriately. (*Compare* Doc. 76-10 at 6-8 *with* Doc. 84-1 at 4; *see also* Doc. 76 at 25 (observing that Defendant Archuleta's report regarding the October 4, 2019 search "does not appear to be referring to either of the two incidents in which he groped [J.M.]").) Accepting J.M.'s supported version of events as true, Defendant's October 4, 2019 search of J.M. and his first allegedly inappropriate search of J.M. were two separate searches.[18]

The record does not indicate the date of Defendant Archuleta's first allegedly inappropriate search of J.M., but as the Court has noted in a prior Memorandum Opinion, it may have occurred

---

[18] Even accepting Plaintiffs' supported facts as true and construing these and undisputed facts in Plaintiffs' favor, it seems likely that the October 4, 2019 search was justified at its inception because Plaintiffs present no evidence to dispute Defendant's evidence that (1) school officials observed J.M. at the scene of an anticipated fight a day earlier, and (2) when a school principal interviewed J.M. about the incident, he became "incredibly agitated" and would not "definitively answer" when asked if school officials would "find nothing on him." (Doc. 65-1 at 15; Doc. 65-17 at 2.) However, the Court need not resolve this issue because, as just discussed, if Plaintiffs' supported version of events is accepted as true, the October 4, 2019 search was not one of the allegedly inappropriate searches J.M. challenges in his lawsuit.

as early as October 2019. (Doc. 89 at 28.) J.M. testified that he was "brought out of class" to be searched due to an "incident[]" but he could not recall what the incident was. (Doc. 76-10 at 6.) Again, Defendant testified that he never suspected any of the student Plaintiffs of possessing a weapon on school grounds. (Doc. 76-4 at 14.)

At his deposition, J.M. gave the following account of this search. The search occurred in a hallway outside the security and nurses' offices, but all the doors to the hallway were closed and only J.M. and Defendant Archuleta were present. (Doc. 76-10 at 6, 8.) Defendant Archuleta had J.M. take off his shoes, take out the insoles, and flip his waistband inside out, and checked his socks. (*Id.* at 6.) Defendant then told J.M. to turn around and put his hands in J.M.'s pockets. (*Id.*) Defendant asked J.M. if he was wearing shorts under his pants and told him to take them off if he was. (*Id.*) J.M. responded that he did not feel comfortable doing that, and Defendant Archuleta "kind of got mad." (*Id.*) Continuing the search, Defendant patted up J.M.'s left leg. (*Id.*) J.M. noticed Defendant "getting really high on [his] thigh" and was then "kind of in shock" to feel Defendant touching his left testicle over his pants. (*Id.* at 3, 6-7.) He froze as Defendant remained in contact with his testicle for a few seconds. (*Id.* at 7.) The contact made J.M. feel "very uncomfortable," "disgusting," and "dirty." (*Id.* at 8.) Based on his own knowledge of human interactions, J.M. got the "vibe" that Defendant was "trying to approach" him "in a sexually inappropriate manner." (*Id.* at 9.)

At his deposition, Defendant Archuleta denied that he ever searched J.M. with no one else present. (Doc. 65-6 at 10.) He also denied that he ever touched J.M.'s genitals. (*Id.* at 9; Doc. 76-4 at 20.) Nevertheless, Defendant argues that the search to which J.M. testified was justified at its inception because Defendant had "reasonable, individualized suspicion that [J.M.] possessed contraband and/or weapons." (Doc. 66 at 20.) In support of this contention, Defendant points to

20

evidence that: (1) in the fall of 2019, school officials had a "heightened concern regarding the potential for school violence" and were "incredibly worried that there would be a shooting at school"; and, (2) J.M. was "believed to be involved, or peripherally involved, with a group of boys that was causing the concern for potential violence on campus."[19] (Doc. 65-1 at 17; Doc. 66 at 20-21.) In response, Plaintiffs argue that these general concerns do not rise to the level of reasonable, individualized suspicion to search J.M. on the occasion at issue. (Doc. 77 at 23.)

It is certainly plausible that, without more, general concerns about school violence, or even more particular concerns that J.M. might become involved in such violence in the future, do not rise to the level of reasonable, individualized suspicion to search J.M. indiscriminately. Nevertheless, because Defendant has raised the defense of qualified immunity on summary judgment, Plaintiffs bear the burden of presenting cognizable evidence to show that Defendant's first allegedly inappropriate search of J.M. was unjustified at its inception under clearly established law. *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088. And, on the present record, Plaintiffs have not met that burden because J.M. testified that something precipitated the search but he cannot recall what it was, and Plaintiffs have identified no other evidence to fill the gap in J.M.'s memory. Thus, Plaintiffs have not shown that the search violated J.M.'s clearly established Fourth Amendment rights on the basis that it was unjustified at its inception.

However, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that the search was unreasonable in scope because Defendant deliberately touched J.M.'s testicle for his own personal gratification, and not accidentally or because he had reasonable grounds to

---

[19] Cleveland officials' concerns about school violence focused on a feud between two students, R.R. and X.D., whose friend groups had been in "quite a few fights," mostly off campus. (Doc. 76-3 at 8-9.) Based on reports from "students" and his own observation that R.R. and J.M. were "very close," Mr. Baca believed that if there was a fight between R.R. and X.D. on campus, J.M. would "back up" R.R. (*Id.* at 9-10.)

21

suspect J.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area. In addition to the evidence tending to show that Defendant's searches of D.M. were unreasonable in scope, as discussed in Section I.A., *supra*, this includes evidence that: (1) Defendant denied touching J.M.'s genitals accidentally; (2) Defendant did not suspect J.M. of possessing a weapon; (3) Defendant conducted the search with no one else present; (4) Defendant tried to get J.M. to take off his pants and shorts and became angry when J.M. said he was not comfortable doing that; (5) Defendant's contact with J.M.'s testicle persisted for a few seconds; (6) based on J.M.'s own knowledge of human interactions, he got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way; (7) Defendant touched J.M.'s genitals again a few weeks to a month later, as discussed below; and, (8) Defendant also tried to touch J.M. inappropriately on two subsequent occasions and failed only because J.M. physically prevented the contact, (Doc. 76-10 at 11-12). Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contact with J.M.'s testicle was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated J.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

A few weeks or a month after his first allegedly inappropriate search of J.M., Defendant Archuleta searched J.M. again. (Doc. 76-10 at 8.) J.M. gave the following account of this search. J.M. was "brought out of class" for this search due to an "incident[]" but cannot recall what the incident was. (*Id.* at 6, 8.) Defendant conducted the search in a hallway outside the security and nurses' offices, with all the doors to the hallway closed and no one but J.M. and Defendant Archuleta present. (*Id.* at 9.) After searching J.M.'s backpack, Defendant Archuleta told J.M. to flip his waistband and looked in his socks. (*Id.*) Defendant performed a "leg to leg pat down, and then out of nowhere" he "grabbed between [J.M.'s] legs" and "essentially tried to grab everything,"

not "just [J.M.'s] left testicle." (*Id.*) Defendant's hand stayed "on [J.M.'s] crotch" for "[a] few seconds." (*Id.* at 10.) J.M. then turned to look at Defendant and saw that he "had a really weird look on his face," like a "smirk." (*Id.* at 9.) Again, based on his own knowledge of human interactions, J.M. "definitely" got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way. (*Id.*)

Defendant Archuleta argues that this second allegedly inappropriate search of J.M. was justified at its inception for the same reasons he claims the first allegedly inappropriate search was justified. (Doc. 66 at 20.) Defendant also points out that Plaintiffs bear the burden of presenting evidence of a Fourth Amendment violation but have "fail[ed] to identify and/or cite sufficient evidence from the record from which a reasonable jury could find … that the search [J.M.] describes was not justified at its inception." (Doc. 85 at 25.) Plaintiffs, in contrast, argue that the search was "unreasonable at its inception" because Defendant Archuleta has not explained why he searched J.M. on this occasion and "could not have been searching for a weapon … because he never suspected [J.M.] of having a weapon." (Doc. 77 at 25; *see* Doc. 76-4 at 14.)

Again, it is plausible that, without more, general concerns about school violence, and even particular concerns that J.M. might become involved in such violence at some future time, do not rise to the level of reasonable suspicion to search J.M. indiscriminately. But again, because Defendant has raised the defense of qualified immunity on summary judgment, Plaintiffs bear the burden of presenting cognizable evidence to show that Defendant's second allegedly inappropriate search of J.M. was unjustified at its inception under clearly established law. *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088. And again, on the present record, Plaintiffs have not met this burden because J.M. testified that something led to the search but he cannot recall what it was, and Plaintiffs have identified no other

evidence to fill the gap in J.M.'s memory. Thus, Plaintiffs have not shown that the search violated J.M.'s clearly established Fourth Amendment rights because it was unjustified at its inception.

Again, however, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that the search was excessive in scope because Defendant Archuleta deliberately touched J.M.'s genitals for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect J.M. possessed a weapon or had concealed evidence of wrongdoing in the vicinity of his genitals. In addition to the evidence just discussed regarding Defendant's first allegedly inappropriate search of J.M., this includes evidence that: (1) Defendant conducted the search with no one else present; (2) Defendant's contact with J.M.'s crotch persisted for a few seconds; (3) J.M. got the "vibe" that Defendant was trying to approach him in a sexually inappropriate way; and, (4) immediately after Defendant grabbed his crotch, J.M. turned and saw Defendant smirking at him. Based on this evidence, a reasonable factfinder could conclude that Defendant's contact with J.M.'s genitals was not reasonably related to the objectives of the search at issue, was excessively intrusive, and violated J.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For all of the above reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of J.M.

### C.    Defendant Archuleta's Allegedly Inappropriate Searches of L.M.

L.M. claims that Defendant Archuleta touched him inappropriately during two searches his freshman year. (Doc. 76-11 at 7-11.) At his deposition, L.M. gave the following account of the first such search. L.M. could not recall "why [he] was pulled to the side or why [he] was caught – what [he] got caught doing" that led to the search. (*Id.* at 9.) However, as discussed in Sections I.A. and I.B., *supra*, Defendant never suspected that any student Plaintiff possessed a weapon on school

24

grounds. (Doc. 76-4 at 14.) Defendant searched L.M. in the presence of Assistant Principal Rudy Galindo. (Doc. 76-11 at 4, 7, 11.) During the search, Defendant Archuleta put his hands in L.M.'s pockets, felt around L.M.'s thigh, and then felt around L.M.'s penis and testicles for about five seconds. (*Id.* at 8-9.) Defendant "kind of cup[ped] over [L.M.'s] penis and [his] balls" and "fe[lt] them, fe[lt], and just fe[lt] [his] actual penis and . . . like, just grab[bed] it[.]" (*Id.* at 15.) L.M. protested by saying, "Whoa, dude," and taking a step back. (*Id.* at 7, 9-10.) Defendant "made a remark" in response, saying something like "Oh yeah. Whatever" in a "giggle" tone of voice. (*Id.* at 8.) Defendant did not find any contraband during this search. (*Id.* at 10.)

Regarding Defendant's second allegedly inappropriate search of L.M., in turn, L.M. testified to the following. Defendant searched L.M. after L.M. was caught vaping in a school restroom. (*Id.* at 10.) He took L.M. to Mr. Galindo's office, where Mr. Galindo told L.M. he was going to be searched to see if he had anything else on him. (*Id.* at 7, 10.) Defendant Archuleta directed L.M. to face the wall with his hands in the air and patted him down. (*Id.* at 10, 15.) While Defendant was "in [L.M.'s] pockets," he "grop[ed]" and "rubb[ed]" around L.M.'s genitals and "cupped over [his] penis and [his] balls and kind of felt them for a little."[20] (*Id.*) Asked how long Defendant was in contact with his genitals, L.M. responded, "three to five, maybe five seconds." (*Id.*) Although the contact Defendant made with L.M.'s genitals on both of these occasions did not cause L.M. physical pain and did not involve skin-to-skin contact, L.M. nevertheless found it "gross and disturbing." (*Id.* at 8, 15.)

---

[20] With respect to whether Defendant rubbed his genitals, L.M. testified that Defendant Archuleta was "I guess groping. I don't want to say, like – I don't know, rubbing on my penis. I guess it's that as well. I don't know. Groping, we'll call it groping … groping around my genitals, my – my penis." (Doc. 76-11 at 10.) Although this testimony is not wholly free of ambiguity, construed in Plaintiffs' favor, a reasonable factfinder could nevertheless rely on it to find that Defendant rubbed as well as groped L.M.'s genitals.

On the present record, Defendant Archuleta has not conceded that he ever searched L.M. in Mr. Galindo's office; and, at his deposition, Defendant denied that he ever touched L.M.'s genitals. (Doc. 65-6 at 7-9; Doc. 76-4 at 20.) Nevertheless, Defendant contends that the allegedly inappropriate searches L.M. described were justified by "reasonable, individualized suspicion that L.M. possessed contraband or vaping materials." (Doc. 66 at 16.) In support, Defendant points to evidence that: (1) he knew L.M. had been caught smoking an e-cigarette in a school locker room on August 29, 2019, (Doc. 65-6 at 7; Doc. 76-4 at 17; Doc. 76-2 at 11-13); (2) L.M. admitted to being caught vaping in a school restroom just before the second allegedly inappropriate search; and, (3) "[i]n their experience, school officials know that when a student is found to have one vaping device, the majority of [the] time those students also possess other … vaping devices," (Doc. 85 at 22; *see* Doc. 65-1 at 8). Defendant further argues that Plaintiffs have failed to meet their burden to show that the first allegedly inappropriate search was not justified at its inception, pointing to L.M.'s testimony that he could not recall "why [he] was pulled to the side or why [he] was caught – what [he] got caught doing" that led to the search. (Doc. 85 at 21-22 & n.7; *see* Doc. 76-11 at 9.)

Plaintiffs counter that both of Defendant's allegedly inappropriate searches of L.M. were unjustified at their inception. (Doc. 77 at 19-22.) However, L.M. admitted that he cannot recall what he did that led to the first search, and Plaintiffs have presented no other evidence to fill the gap in L.M.'s memory. And, L.M. admitted that the second search occurred because he was caught vaping on school grounds in violation of school rules. (Doc. 76-11 at 10.) Further, Plaintiffs have failed to cite to any Supreme Court or Tenth Circuit precedent that (1) supports their position that the second search was nevertheless unjustified at its inception, and (2) either is directly on point or applies with obvious clarity. Thus, on the present record, Plaintiffs have not met their burden to

26

show that either search was unjustified at its inception under clearly established law.[21] *T.L.O.*, 469 U.S. at 341-42; *A.M.*, 830 F.3d at 1136; *Estate of Booker*, 745 F.3d at 411; *Martinez*, 563 F.3d at 1088.

As with Defendant's searches of D.M. and J.M., however, Plaintiffs *have* presented evidence from which a reasonable factfinder could infer that Defendant's allegedly inappropriate searches of L.M. were unreasonable in scope because Defendant deliberately touched L.M.'s genitals for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect L.M. possessed a weapon or had concealed evidence of wrongdoing in his groin area. In addition to the evidence tending to show that Defendant's searches of D.M. and J.M. were unreasonable in scope, as discussed in Sections I.A. and I.B., *supra*, this includes evidence that: (1) Defendant testified that he never touched L.M.'s genitals accidentally; (2) Defendant never suspected L.M. of possessing a weapon; (3) Defendant touched L.M.'s genitals during two separate searches; (4) Defendant's contacts with L.M.'s genitals persisted for about five seconds each time; and, (5) when L.M. protested Defendant touching his genitals the first time by saying "Whoa, dude," Defendant responded by saying something like "Oh yeah. Whatever," in a "giggle" tone of voice. Based on the totality of this evidence, a reasonable factfinder could conclude that Defendant's contacts with L.M.'s genitals were not reasonably related to the objectives of the searches at issue, were excessively intrusive, and violated L.M.'s clearly established Fourth Amendment rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42.

---

[21] Plaintiffs argue that any suspicion the second inappropriate search would turn up additional evidence of wrongdoing was an "inchoate hunch" because L.M. had already handed over the vaping device he was caught using. (Doc. 77 at 21.) But as noted above, Defendant has presented undisputed evidence that, in school officials' experience, when a student is found to have one vape product, "the majority of the time" he also possesses other such products. (Doc. 65-1 at 8.)

DNM 70

In sum, Plaintiffs have presented cognizable evidence that Defendant Archuleta, while searching D.M., J.M., and L.M. as a campus security aide at Cleveland, touched these adolescents' genitals deliberately for his own personal gratification, and not accidentally or because he had reasonable grounds to suspect they possessed a weapon or had concealed evidence of wrongdoing in their groin areas. Based on this evidence, a reasonable factfinder could conclude that Defendant's contacts with the student Plaintiffs' genitals were not reasonably related to the objectives of the searches he was conducting, were excessively intrusive, and violated the student Plaintiffs' clearly established rights. *Safford*, 557 U.S. at 374-77; *T.L.O.*, 469 U.S. at 341-42. For these reasons, Defendant Archuleta is not entitled to qualified immunity from Plaintiffs' Fourth Amendment claims based on his allegedly inappropriate searches of D.M., J.M., and L.M. In addition, in light of the genuine issues of material fact Plaintiffs have shown, Defendant is not entitled to summary judgment on these claims.

## II.    Plaintiffs have not asserted Fourteenth Amendment substantive due process claims against Defendant Archuleta.

In addition to challenging Plaintiffs' Fourth Amendment claims, Defendant in his Motion argues that he is entitled to qualified immunity from any Fourteenth Amendment substantive due process claims Plaintiffs may have asserted. (Doc. 66 at 23-24.) In their response, Plaintiffs counter that Defendant is not entitled to qualified immunity from such claims because his alleged actions shock the conscience and violated the student Plaintiffs' clearly established Fourteenth Amendment substantive due process rights to bodily integrity. (Doc. 77 at 29-35.)

In his reply, however, Defendant Archuleta points out that Plaintiffs' complaints do not in fact assert any substantive due process claims. (Doc. 85 at 29-30.) Specifically, he observes that

> Plaintiffs' complaints are devoid of any allegations or language specifically identifying the Substantive Due Process Clause of the Fourteenth Amendment;

28

there are no allegations regarding "substantive due process rights," or "the right to bodily integrity," or conduct that is "shocking to the conscience."

(*Id.* at 29.) Defendant further notes that "Plaintiffs have not moved to amend their complaints to add a substantive due process claim." (*Id.*) Defendant therefore argues that Plaintiffs should not be allowed to pursue substantive due process claims asserted for the first time in their summary judgment response. (*Id.* at 29-30.)

Each Plaintiff's complaint refers to the Fourteenth Amendment twice. (Doc. 1-3 at 9, 11; Civ. No. 21-648, Doc. 1-3 at 4-5; Doc. 21-751, Doc. 1-3 at 5-6.) The first reference is found in Count I, which is captioned, "Violation of 42 U.S.C. [§] 1983, Illegal Search and Seizure under the Fourth Amendment Against Defendant Archuleta in his Individual Capacity," in a sentence which states in its entirety, "[t]he 4th and 14th Amendments of the United States Constitution vested Plaintiff with a clearly established right to be free from unreasonable warrantless search and seizure." (Doc. 1-3 at 9; Civ. No. 21-648, Doc. 1-3 at 3-4; Civ. No. 21-751, Doc. 1-3 at 4-5.) The second reference is found in Count II, which is captioned, "Violations of N.M. Tort Claims Act NMSA 1978 § 41-4-12 Against George Archuleta and Rio Rancho Public Schools Board of Education," in a sentence which states in its entirety, "Defendant Archuleta also seized [the student Plaintiff] in violation of his rights under Article 2 Section 10 of the New Mexican Constitution[22] and in violation of the 4th and 14th Amendments of the United States Constitution."[23] (Doc. 1-3 at 10-11; Civ. No. 21-648, Doc. 1-3 at 4-5; Civ. No. 21-751, Doc. 1-3 at 5-6.) Nowhere do any of the complaints refer to "due process" or "bodily integrity." (*See generally id.*) In these

---

[22] Article II, Section 10 of the New Mexico Constitution pertains to searches and seizures. N.M. Const. Art. II, § 10. The portion of the New Mexico Constitution that pertains to due process is found in Article II, Section 18. N.M. Const. Art. II, § 18. Plaintiffs do not refer to Article II, Section 18 in their complaints.

[23] It seems likely that Plaintiffs made these references to Fourteenth Amendment in their complaints because "the Fourth Amendment applies to [public school officials] through the Fourteenth Amendment." *T.L.O.*, 469 U.S. at 334.

DNM 72

circumstances, the Court concludes that Plaintiffs have failed to assert any Fourteenth Amendment substantive due process claims against Defendant Archuleta and declines to issue an advisory opinion addressing the viability of, or Defendant's entitlement to qualified immunity from, claims Plaintiffs have neither pleaded nor sought leave to add.

## CONCLUSION

For all of the above reasons, the Court FINDS that Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity on Count I (Doc. 66) is not well-taken and it is hereby DENIED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

30